120 A.3d 277

COMMONWEALTH of Pennsylvania, Appellee

v.

Andre STATON, Appellant.

Supreme Court of Pennsylvania.

Submitted July 18, 2014.

Decided July 20, 2015.

402

404

Teri B. Himebaugh, Esq., Schwenksville, for Andre Staton.

Richard A. Consiglio, Esq., Blair County District Attorney's Office, Amy Zapp, Esq., PA Office of Attorney General, for Commonwealth of Pennsylvania.

SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.

## *OPINION*

Justice BAER.[1]

In 2006, Andre Staton ("Appellant") was convicted of the first degree murder of his girlfriend and was sentenced to death. His judgment of sentence was affirmed on direct appeal, and Appellant subsequently filed a petition for collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. After affording Appellant proper notice, the Court of Common Pleas of Blair County ("PCRA court") denied the petition without a hearing, and Appellant filed the instant direct appeal to this Court.[2] Because we conclude that the PCRA court's findings are supported by the record and that the court's legal conclusions are free of error, we affirm the denial of post-conviction relief.

## I.  Background

The facts underlying Appellant's conviction and death sentence were set forth at length in this Court's opinion deciding his direct capital appeal. *Commonwealth v. Staton,* 614 Pa. 487, 38 A.3d 785 (2012). A brief recitation of the facts is necessary, however, to provide context for the issues raised herein.

The record establishes that Appellant and Beverly Yohn were in an intimate relationship during which Appellant was physically and verbally abusive. As a result of the abuse, Yohn and her two sons moved to the residence of Yohn's mother, Penny Lantz. In January of 2004, Yohn reported to police that Appellant had struck her. She subsequently filed a Protection From Abuse ("PFA") petition, and a temporary PFA order was entered against Appellant on January 27, 2004. Following a subsequent hearing, the trial court entered a final PFA order on February 19, 2004.

1.  This matter was reassigned to this author.

2.  This Court has exclusive jurisdiction of appeals from final orders denying post-conviction relief in death penalty cases. 42 Pa.C.S. § 9546(d).

While at a bar several days later on February 24, 2004, Appellant told the bartender about his frustrations with his girlfriend, and about how he had peeked in the window at her the night before. He also indicated that he gave her a substantial amount of money for a house that he could no longer live in, but stated that he would soon take care of the matter. The next morning, Appellant was seen inside a parked car approximately one and one-half blocks away from the residence of Yohn's mother. Yohn's son, Justin, was outside the home when he saw Appellant run up to the rear porch of the residence with his finger to his lips, directing Justin to be quiet. Appellant then kicked in the door and entered the kitchen. With Yohn's son, Jeremy, in the room, Appellant opened his jacket, pulled out a knife, and began stabbing Yohn until she fell to the floor with the large knife still in her back. Appellant then fled through the back door, and encountered Justin outside waiting in the car to go to school. Appellant threw Justin from the car and drove away in it. Yohn died later that day from her injuries. Appellant was thereafter charged with first degree murder, aggravated assault, burglary, criminal trespass, receiving stolen property, and theft by unlawful taking.

At trial, Appellant was represented by Donald Speice, Esquire, and J. Kirk Kling, Esquire. The Commonwealth presented the eyewitness testimony of Jeremy Yohn, indicating that he saw Appellant pull a knife from his coat and stab his mother repeatedly. Dr. Vimal Mittal, a forensic pathologist, testified that in his opinion, within a reasonable degree of medical certainty, the cause of Yohn's death was multiple stab wounds, including one to the heart and left jugular vein, and that the manner of death was homicide. Further, Forensic Scientist Pam McCall of the Pennsylvania State Police Crime Laboratory testified that DNA found on the knife in Yohn's back contained a mixture of DNA from both Yohn and Appellant.

Appellant testified on his own behalf, and admitted that he stabbed Yohn. His defense was that he did not enter the residence to harm her, but rather that Yohn had the knife and

began "swinging at him." Notes of Testimony ("N.T."), May 1, 2006, at 26–29. Appellant explained that the next thing he remembered was seeing Yohn with blood coming out of her mouth. *Id.*

On May 2, 2006, the jury convicted Appellant of all charges. Following a penalty hearing, the jury returned a sentence of death, concluding that the two aggravating circumstances, that Appellant committed a killing while in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6), and that at the time of the killing Appellant was subject to a court order restricting his behavior towards the victim, *id.* § 9711(d)(18), outweighed evidence establishing the "catchall" mitigating circumstance of "any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." *Id.* § 9711(e)(8).

On June 1, 2006, the trial court formally imposed the sentence of death, and later denied post-trial motions. During the appellate process, the trial court appointed five separate attorneys to represent Appellant. Each attorney subsequently withdrew either because Appellant terminated representation or because, after being appointed, counsel discovered that he or she lacked the qualifications to represent a capital defendant as set forth in Pa.R.Crim.P. 801.[3] Attorney Thomas Farrell was thereafter appointed as counsel and represented Appellant on appeal, notwithstanding Appellant's request that he file a motion to withdraw. *See Commonwealth v. Staton,* 608 Pa. 404, 12 A.3d 277 (2010) (denying Attorney Farrell's motion to withdraw as Appellant's seventh attorney in his capital case even though Appellant sought to terminate his representation, and directing Attorney Farrell to file a brief in support of Appellant's direct appeal).

As noted, this Court affirmed Appellant's judgment of sentence on direct appeal. *Commonwealth v. Staton,* 614 Pa. 487, 38 A.3d 785 (2012), and rejected the single issue presented, i.e., whether the Commonwealth proved beyond a reasonable

---

**3.** Pennsylvania Rule of Criminal Procedure 801 sets forth special rules for cases in which the death sentence is authorized, including specific experience and education qualifications for defense counsel.

doubt the aggravating circumstance that Appellant was subject to a court order restricting his behavior towards the victim pursuant to 42 Pa.C.S. § 9711(d)(18). Appellant contended that insufficient evidence existed to support the Section 9711(d)(18) aggravator because he was never served formally with the PFA order, and was under the reasonable belief that Yohn had withdrawn her petition at the final PFA hearing.

We rejected Appellant's contention, relying on our previous decision in *Commonwealth v. Stallworth*, 566 Pa. 349, 781 A.2d 110 (2001), which held that Section 9711(d)(18) requires a defendant "either be given actual notice or have the equivalent knowledge of a PFA order" in order to be "subject to" the aggravator. *Staton*, 38 A.3d at 794 (citing *Stallworth*, 781 A.2d at 124). We held that although Appellant acted deliberately to evade service of the PFA order, and, thus, did not receive actual notice, he possessed equivalent knowledge of the PFA order, which raised a jury question regarding proof of the aggravator. *Staton*, 38 A.3d at 794.

After we affirmed Appellant's sentence of death on direct appeal, Appellant filed a *pro se* PCRA petition on May 9, 2012, and later an amended *pro se* PCRA petition on August 20, 2012.[4] Therein, Appellant raised, *inter alia*, a challenge to trial counsel's capital case qualifications, and claims of prosecutorial misconduct and ineffective assistance of counsel. Timothy Burns, Esquire, was appointed to represent Appellant. Prior to the filing of a counseled amended PCRA petition or brief, Appellant sought to terminate Attorney Burns' representation and filed a motion to proceed *pro se*.

The parties appeared before the PCRA court on May 13, 2013, the date scheduled for the PCRA evidentiary hearing, and Appellant's counsel first presented a motion for recusal of the PCRA court judge, which the court denied. The parties then proceeded to discuss Appellant's motion to proceed *pro*

4. The amended *pro se* petition consisted of a twenty-three page single-spaced document, raising fourteen claims, one of which encompassed eight sub-issues. The petition further set forth argument and citation to legal authority.

*se.* Both Appellant's counsel and the Commonwealth opposed the request, citing Appellant's inability to present cogent legal argument on his own behalf, his attempts to terminate several prior counsel, and the confusion and delay that would result from self-representation. Appellant disagreed, expressing his continued dissatisfaction with counsel and asserting that he understood the ramifications of self-representation, had been deemed legally competent, was confident that he could represent himself with the help of standby counsel, and was currently prepared to do so. N.T., May 13, 2013, at 27–28, 31. The PCRA court denied Appellant's motion to proceed *pro se,* holding that it was not in his best interests or in the interest of justice to terminate counsel's representation. *Id.,* at 32.

In response, Appellant stated that he desired to withdraw all appeals and requested the court to "proceed forth with lethal injection." *Id.* The PCRA court denied this request, noting that the motion was not made by counsel, and that it had just ruled that Appellant could not represent himself. *Id.* at 33. Appellant thereafter became very emotional, called the case a "disgrace," and again requested that the court proceed with lethal injection. *Id.* at 34. After the PCRA court reminded Appellant that it had the prerogative of dismissing his petition without a hearing, Appellant responded that it should have done so, thereby allowing the Supreme Court to review the case. *Id.* at 34. The PCRA court then indicated that it would not entertain any further motions unless they were filed with the court in written form. *Id.* at 36.

As the PCRA court declared that the hearing was concluded, Appellant stood up from his chair and swung his shackled arms suddenly and violently, striking Attorney Burns in the head, eyes, and nose with such force that it propelled Attorney Burns to the floor and momentarily knocked him unconscious. *Id.;* Criminal Complaint filed to No. 1453 of 2013 in the Court of Common Pleas of Blair County, Commonwealth Exhibit A. Attorney Burns suffered a severe concussion and was taken to the hospital for medical treatment. The incident was captured on the courthouse video surveillance system. As a result of

the attack, Appellant was later charged with aggravated assault by prisoner and related offenses.[5]

By order dated May 24, 2013, the PCRA court made four rulings. First, in light of the criminal charges filed against Appellant in relation to his violent attack on Attorney Burns, the court vacated its previous order appointing Attorney Burns as PCRA counsel. Second, the PCRA court held that Appellant waived counsel under Pa.R.Crim.P. 904(H)(1)(a) due to his assertions during the May 13, 2013 hearing (and in prior hearings before the court) that he wished to discharge counsel and represent himself, and that he understood the nature of capital proceedings, his entitlement to counsel, and his rights under the PCRA.[6] The PCRA court noted that prior to the hearing conducted on May 13, 2013, a mental health expert had evaluated Appellant for purposes of the PCRA proceedings and deemed him competent.

Third, the PCRA court indicated that, pursuant to Pa. R.Crim.P. 909(B)(1), it had reviewed the *pro se* amended PCRA petition filed on August 20, 2012, and was satisfied that there were no genuine issues concerning any material fact warranting an evidentiary hearing, and that Appellant was not entitled to post-conviction collateral relief.[7] Finally, the PCRA court gave notice that it intended to dismiss Appellant's petition without an evidentiary hearing, and stated specific reasons for dismissing each of the fourteen claims raised, which rationale is set forth *infra*, to the extent that Appellant reiterates such claims in this appeal. Appellant did not file a timely response to the PCRA court's notice of intent to

5. After Appellant filed the instant appeal, he was convicted and sentenced to five to ten years of incarceration for the assault.

6. The text of Pa.R.Crim.P. 904(H)(1)(a) is set forth *infra*, at n. 10.

7. Pa.R.Crim.P. 909(B) sets forth the procedure for conducting hearings on petitions in death penalty cases and provides that the PCRA court shall review the PCRA petition and the Commonwealth's answer and determine whether a hearing is required. If the PCRA court is satisfied there are no genuine issues of material fact, that the defendant is not entitled to post-conviction relief, and that no legitimate purpose would be served by any further proceedings, it shall give notice to the parties of its intent to dismiss the petition and the reasons for the dismissal, to which the defendant may respond within 20 days.

dismiss. On September 25, 2013, the trial court entered an order dismissing Appellant's PCRA petition.

Appellant filed a notice of appeal to this Court and subsequently retained private counsel, who filed an appellate brief on his behalf, raising six issues for review.[8] In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination "is supported by the record and free of legal error." *Commonwealth v. Robinson*, 623 Pa. 345, 82 A.3d 998, 1005 (2013). To be entitled to PCRA relief, Appellant must establish, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S. § 9543(a)(2), his claims have not been previously litigated or waived, and "the failure to litigate the issue prior to or during trial ... or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." *Id.* § 9543(a)(3), (a)(4). An issue is previously litigated if "the highest appellate court in which [Appellant] could have had review as a matter of right has ruled on the merits of the issue." *Id.* § 9544(a)(2). An issue is waived if Appellant "could have raised it but failed to do so before trial, at trial, ... on appeal or in a prior state post[-]conviction proceeding." *Id.* § 9544(b).

■ To obtain relief on a claim of ineffective assistance of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This Court has applied the *Strickland* test by looking to the following three elements that must be satisfied: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his actions or failure to act; and (3) the PCRA petitioner

8. Appellant's privately retained counsel, Teri B. Himebaugh, Esquire, filed an appellate brief in this Court on May 14, 2014. On January 21, 2015, counsel filed a motion to withdraw because Appellant and his family had failed to make multiple payments for her representation, leaving more than half of her fee outstanding. Counsel asserted that Appellant does not contest her request to withdraw, and the Commonwealth has indicated it has no objection. Because we have considered the counseled appellate brief in our disposition of this appeal and we are denying Appellant collateral relief, we dismiss as moot appellate counsel's motion to withdraw as counsel.

suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987). Counsel is presumed to have rendered effective assistance of counsel. *Commonwealth v. Montalvo*, 604 Pa. 386, 986 A.2d 84, 102 (2009). Further, we are not required to analyze the elements of an ineffectiveness claim in any particular order; if a claim fails under any requisite prong, the Court may address that prong first. *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 701 (1998). Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Jones*, 590 Pa. 202, 912 A.2d 268, 278 (2006). We keep this well-established jurisprudence in mind while examining Appellant's claims.

## II. Denial of Right to Counsel

In his first issue, Appellant ignores his violent attack on Attorney Burns during the proceeding on May 13, 2013, and his request to proceed *pro se*, and contends that the PCRA court denied him his constitutional right to counsel by permitting counsel to withdraw and by adjudicating the claims presented in his *pro se* PCRA petition.[9] He cites testimony from a previous hearing conducted on August 30, 2012, during which Appellant expressed his desire for counsel and the PCRA court categorized some of his *pro se* arguments as "unintelligible." N.T., Aug. 30, 2012, at 11. According to Appellant, if his *pro se* petition was unintelligible, the court had a constitutional duty in this capital case to appoint qualified counsel so that the issues could be identified more clearly, rather than proceed to address and reject them as presented, resulting in a complete denial of counsel. *See* Brief for Appellant at 17–18 (citing *Commonwealth v. Padilla*, 622 Pa. 449, 80 A.3d 1238, 1253 (2013) (holding that a conviction will generally be vacated for a violation of the Sixth Amendment right to counsel only where the reliability of the trial has been

---

9. Because this issue presents a question of law, our standard of review is plenary, and our scope of review is *de novo*. *Commonwealth v. Jette*, 611 Pa. 166, 23 A.3d 1032, 1036 (2011).

undermined, but prejudice is presumed where the defendant suffers a complete denial of counsel during a critical stage of trial); and *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 699 (1998) (holding that "the denial of PCRA relief cannot stand unless the petitioner was afforded the assistance of counsel")).

The Commonwealth responds that Appellant's issue is laced with misrepresentations as it omits any discussion of his vicious attack on his own counsel, which precipitated counsel's withdrawal. It submits that Appellant also ignores the PCRA court's findings that he asserted his desire and ability to proceed *pro se* on the record, and that a medical expert determined he was competent. The Commonwealth maintains that, based on these factors, the PCRA court properly concluded that Appellant waived counsel under Pa.R.Crim.P. 904(H)(1)(a).[10] The Commonwealth emphasizes that at the May 13, 2013 proceeding, Appellant asserted that he "understands the ramifications and the pitfalls of self[-]representation …" and "would like to proceed *pro se* with this case so the Defendant can perfect the record, bring the case before the Court and argue and litigate the proceedings." N.T., May 13, 2013, at 27–28. Appellant further stated that he was confident that he could represent himself competently. *Id.,* at 28. He acknowledged that if he is not successful, "Attorney Burns is here to step in if need be." *Id.,* at 29. The Commonwealth agrees with the PCRA court that Appellant's actions and assertions demonstrated that he elected to proceed *pro se* and that his election was knowing, intelligent, and voluntary. It maintains that the PCRA court's finding of

10. Pa.R.Crim.P. 904(H) (Appointment of Counsel in Death Penalty Cases) states:

   (1) At the conclusion of direct review in a death penalty case, which includes discretionary review in the Supreme Court of the United States, or at the expiration of time for seeking the review, upon remand of the record, the trial judge shall appoint new counsel for the purpose of post-conviction collateral review, unless:

     (a) the defendant has elected to proceed *pro se* or waive post-conviction collateral proceedings, and the judge finds, after a colloquy on the record, that the defendant is competent and the defendant's election is knowing, intelligent, and voluntary;

Pa.R.Crim.P. 904(H)(1)(a).

waiver is correct, even absent a formal colloquy, because Appellant's violent behavior prevented the Court from conducting an official inquiry on the record.

The Commonwealth contends, alternatively, that Appellant's brutal actions of attacking Attorney Burns in the courtroom should be deemed a forfeiture of his right to counsel, which requires no formal colloquy to determine if the relinquishment of the right is knowing and voluntary. *See Commonwealth v. Coleman*, 905 A.2d 1003, 1008 (Pa.Super.2006) (holding that the defendant "played games" with the court system to such an extent that she forfeited her right to counsel, thereby rendering unnecessary the colloquy required for a waiver of counsel); *Commonwealth v. Thomas*, 879 A.2d 246, 257 (Pa.Super.2005) (holding that the forfeiture of the right to counsel, unlike the waiver of such right, does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's "extremely serious misconduct" or "extremely dilatory conduct"); and *United States v. Leggett*, 162 F.3d 237, 250 (3d Cir.1998) (holding that a defendant's unprovoked physical battery of his attorney in the courtroom constituted "extremely serious misconduct" that amounts to the forfeiture of the right to counsel, regardless of whether the defendant intended to relinquish the right).

It was appropriate for the PCRA court to rule upon the merits of Appellant's *pro se* PCRA petition, the Commonwealth submits, because the court had reviewed the allegations and determined correctly that they presented no genuine issues of material fact. The PCRA court provided Appellant with a detailed notice of intent to dismiss pursuant to Pa. R.Crim.P. 909(b), and Appellant failed to file a timely response to dispute the PCRA court's determination that he was not entitled to post-conviction relief. Accordingly, the Commonwealth concludes, the PCRA court acted properly in dismissing the PCRA petition by order dated September 25, 2013.

■ Without hesitation, we conclude that the PCRA court did not err in permitting Attorney Burns to withdraw after Appellant launched an unprovoked violent attack upon him in

open court during the PCRA hearing, which resulted in Attorney Burns suffering a serious concussion necessitating medical treatment, as well as Appellant's conviction of aggravated assault. Further, we hold that the PCRA court did not err by adjudicating the issues presented in Appellant's *pro se* petition, rather than appointing new counsel to prepare an amended petition. We reach these conclusions based on our finding that Appellant's actions constituted a forfeiture of his right to counsel.

In *Commonwealth v. Lucarelli,* 601 Pa. 185, 971 A.2d 1173 (2009), this Court recognized the legal distinction between the waiver of the right to counsel and the forfeiture of the right to counsel. We explained that waiver is "an intentional and voluntary relinquishment of a known right." *Id.* at 1179 (quoting *United States v. Goldberg,* 67 F.3d 1092, 1099 (3d Cir.1995)). To the contrary, forfeiture does not require any intent to relinquish a right, but rather arises from a defendant's "extremely serious misconduct" or "extremely dilatory conduct." *Id.* (citations omitted). Thus, the requisite of a colloquy to ensure that the defendant's waiver of the right to counsel is made knowingly, voluntarily and intelligently does not apply to circumstances where forfeiture is found.[11]

We stated, "[t]o hold otherwise would permit a recalcitrant defendant to engage in the sort of obstructive behavior that mandates the adoption of the distinction between forfeiture and waiver in the first instance." *Id.* This Court recognized other jurisdictions, which have held that defendants forfeit their right to counsel where they have either engaged in physically abuse and threatening conduct or have engaged in dilatory conduct. *Id.* at 1180 (citing *e.g. Minnesota v. Lehman,* 749 N.W.2d 76, 81–82 (Minn.Ct.App.2008) (collecting cases and holding that the defendant forfeited his right to court-appointed counsel where he attacked and beat counsel in open court)).

11. The factual predicate in *Lucarelli* did not involve a death penalty case on collateral review; thus, the requirement of a colloquy to waive the right to counsel arose from Pa.R.Crim.P. 121, rather than Pa. R.Crim.P. 904(H)(1)(a), as in the instant case.

Applying this jurisprudence to the instant case, it is clear that Appellant's fierce physical assault of his counsel in the presence of the court constitutes "extremely serious conduct" establishing the forfeiture of the right to counsel. Accordingly, the PCRA court did not err by permitting Attorney Burns to withdraw and adjudicating Appellant's *pro se* petition.[12, 13]

## III. Lack of Capital Case Qualifications

Appellant next contends that he was denied his right to the effective assistance of counsel because trial counsel, Attorney Donald Speice, who was the Chief Public Defender of Blair County and was appointed to represent Appellant in 2005, failed to obtain six hours of capital case continuing legal education ("CLE") credits pursuant to Pa.R.Crim.P. 801 prior to his appointment to represent Appellant.[14] In support of this claim, Appellant relies primarily upon a Pennsylvania Continuing Legal Education Board Website printout that he alleges was provided to him on December 12, 2007. He emphasizes that the *Comment* to Rule 801 provides that "the educational and experience requirements of the rule may not be waived by the trial court or appellate court," *Comment* to Pa.R.Crim.P. 801, and reasons that Attorney Speice's lack of capital case CLE credits renders him incompetent to represent a capital defendant. Without referencing a specific aspect of counsel's performance, Appellant equates alleged incompetence due to CLE noncompliance with trial counsel ineffectiveness, and concludes, without analysis, that he was "presumptively prejudiced" because counsel's lack of capital

12. Although unnecessary to finding a forfeiture of the right to counsel, we note that Appellant had previously terminated several of his attorneys and was attempting to terminate Attorney Burns when he attacked him.

13. In light of our holding that Appellant forfeited his right to counsel, it is unnecessary to decide whether the PCRA court was correct in holding that Appellant also waived his right to counsel pursuant to Pa.R.Crim.P. 904(H).

14. He further maintains that other unqualified attorneys represented him, but ignores that each attorney was replaced as soon as it was discovered that the requisites of Pa.R.Crim.P. 801 had not been satisfied.

case education had an adverse effect on the outcome of his trial. Brief for Appellant at 31.

The PCRA court denied relief on this claim, finding that Attorney Speice had sufficient capital case CLE credits and had satisfied the experiential requisites because he had been an active trial practitioner in excess of five years and had served as lead or co-counsel in more than eight felony cases that were tried to verdict before a jury. The Commonwealth responds that the PCRA court's ruling was free from legal error, and that Appellant relies mistakenly on Pennsylvania Continuing Legal Education Board information applicable to 2007, after Attorney Speice was no longer a public defender. The Commonwealth concludes that Appellant's right to qualified counsel was not abridged in any way.

The PCRA court's ruling is supported by the record and is free of legal error. As noted, Pennsylvania Rule of Criminal Procedure 801 provides for education and experiential qualifications for defense counsel in capital cases. At issue here are the educational requirements, which mandate "18 hours of training relevant to representation in capital cases, as approved by the Pennsylvania Continuing Legal Education Board." Pa.R.Crim.P. 801(2)(a). Our June 4, 2004 order adopting Rule 801 utilized "phase-in" language, directing counsel to receive six credits for the time period prior to Attorney Speice's appointment on September 2, 2005. The parties herein agree that six hours of capital case educational training were required at the time counsel was appointed, but disagree on whether that training was obtained. A review of the record indicates that Attorney Speice completed more than the requisite six hours of capital case CLE. *See* Commonwealth Exhibit D, Supreme Court of Pennsylvania Continuing Legal Education Board course attendance record dated September 29, 2006 (indicating that Attorney Speice had completed over eight hours of capital case training by April 28, 2005).

■ Moreover, we emphasize that even assuming Attorney Speice did not satisfy Rule 801's capital case qualifications, such fact alone would not establish his ineffectiveness at

Appellant's trial. Rather, all the prongs of the *Strickland/Pierce* ineffectiveness standard must be demonstrated. *See Commonwealth v. Boxley,* 596 Pa. 620, 948 A.2d 742, 747 (2008) (holding that "Rule 801 in no way suggests that a defendant is automatically entitled to a new trial if his counsel fails to comply with the educational requirements of the rule"); *Commonwealth v. Martin,* 607 Pa. 165, 5 A.3d 177, 193 (2010) (citations omitted) (holding that a lawyer's inexperience in capital cases does not render him presumptively ineffective as inexperience alone is not equivalent to ineffectiveness; rather, all the elements of an ineffectiveness claim must be satisfied). Accordingly, the PCRA court did not err in denying Appellant relief on this claim.

## IV. Trial Counsel Ineffectiveness in Closing Argument

Appellant contends that trial counsel was ineffective for conceding in closing argument that he committed first degree murder. He relies upon the following statement:

> I told you during jury selection, I told you during my opening, Mr. Staton is guilty of criminal homicide. We concede that. There is no question about it because he did, in fact, intentionally, knowingly or recklessly or negligently cause the death of another human being.

N.T., May 2, 2006, at 21. According to Appellant, it is evident that counsel made this prejudicial argument mistakenly because immediately following this admission, counsel argued that Appellant was not guilty of first degree murder. He argues there could have been no reasonable tactical basis for his telling the jury that it could find Appellant guilty of first degree murder, particularly where he argued in his opening statement that he was not guilty of that offense. *See* N.T., Apr. 27, 2006, at 26 (where trial counsel commented that while the defense concedes that Appellant is guilty of criminal homicide, this was not a case of first degree murder). Finally, Appellant contends, there is a substantial likelihood that trial counsel's misstatement would cause the jury significant confusion, which prejudiced him by denying him a reliable verdict.

The Commonwealth responds that Appellant's claim of ineffectiveness fails for lack of arguable merit because trial counsel never conceded that Appellant committed first degree murder. Rather, because the evidence established conclusively that Appellant broke into the victim's home and stabbed her to death, it maintains that trial counsel merely conceded that Appellant's conduct satisfied the definition of criminal homicide, which provides that one is guilty of criminal homicide "if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S. § 2501(a). Had trial counsel attempted to deny that the elements of criminal homicide had been established under the facts presented, the Commonwealth contends, counsel would have lost all credibility with the jury. It argues that when taken in the context of trial counsel's opening and closing remarks, it is clear that trial counsel advocated to the jury that Appellant's criminal acts amounted to, at most, third degree murder, voluntary manslaughter, or involuntary manslaughter, and not first degree murder. Trial counsel's strategy in this regard, the Commonwealth concludes, did not undermine the truth-determining process, was imminently reasonable, and did not alter the outcome of the trial.

The PCRA court denied Appellant relief, finding his argument to be vague and confusing. It appears the PCRA court viewed the contention as challenging comments trial counsel made during his opening statements, rather than closing argument, because the PCRA court cited that portion of the opening statement wherein trial counsel conceded a criminal homicide was committed, but emphasized that it was not a first degree murder case. PCRA Court Order, dated May 24, 2014, at 4.

Regardless of whether the PCRA court conflated trial counsel's opening and closing remarks in its discussion of this claim, we find no error in the court's ultimate conclusion that Appellant is not entitled to relief. We agree with the Commonwealth that the ineffectiveness claim fails for lack of arguable merit because the challenged closing remarks of trial counsel did not concede that Appellant committed first degree

murder. Rather, when read in their entirety, the remarks supported the defense theory that Appellant committed the offense of criminal homicide, but was not culpable of first degree murder because he lacked the specific intent to kill. See *Commonwealth v. Reid*, 627 Pa. 151, 99 A.3d 470, 507 (2014) (holding that to obtain the proper context of a challenged statement made during closing arguments, the court must recount in its entirety the portion of the closing argument wherein those statements appear).

Trial counsel's statement, in context, is as follows:

Now, we get to the charge of criminal homicide. I told you during jury selection, I told you during my opening, Mr. Staton is guilty of criminal homicide. We concede that. There's no question about it because he did, in fact, intentionally, knowingly or recklessly or negligently cause the death of another human being. No question. Now, we get to the question, what degree of criminal homicide are we talking about: The prosecution says murder in the first degree. Murder in the first degree, and again, I'm not giving you all the definitions and stuff, that's coming from the Judge but murder in the first degree of criminal homicide constitutes murder in the first degree when it is committed by an intentional killing. An intentional killing means by poison, lying in wait or any other kind of willful, deliberate and premeditated killing and then we have definitions for exactly what premeditated is and things of that nature which the Judge is going to give you. We suggest to you, ladies and gentlemen, that Mr. Staton is, in fact, not guilty of criminal homicide, murder in the first degree for this reason: you've heard many times about the specific intent to kill that's required for that offense. You heard us asking you in jury selection and I believe in my opening statement whether or not you could accept the proposition about voluntary drug use, drug and alcohol use. You also heard me say to you, folks, that's not the only possibility here, though. Sometimes people do things in a fit of rage that they don't really form an intent to do and only realize

afterwards what they've done. We suggest to you that that's exactly the case here.

N.T., May 2, 2006, at 21–22.

Appellant's ineffectiveness claim appears to focus on trial counsel's use of the word "intentional" while setting forth the verbatim definition of criminal homicide set forth in the Crimes Code, 42 Pa.C.S. § 2501(a), and relies on that sentence in isolation, rather than in connection with trial counsel's clear overall argument to the jury that Appellant did not commit first degree murder as he did not possess the specific intent to kill. When read in context with the remainder of trial counsel's closing statements (which were consistent with the defense theory throughout trial), the message sent to the jury was unmistakable—that Appellant did not commit first degree murder. Accordingly, Appellant's claim of trial counsel ineffectiveness fails for lack of arguable merit.

## V. Trial Counsel Ineffectiveness regarding Testimony of Penny Lantz

■ Appellant next argues that trial counsel was ineffective for failing to object to the testimony of Commonwealth witness, Penny Lantz, the victim's mother. As noted, the victim and her children resided with Lantz after the PFA order had been entered against Appellant, and it was Lantz's kitchen where the fatal stabbing took place. Lantz testified at trial that the knife used in the murder did not come from her kitchen. N.T., Apr. 28, 2006, at 59. This testimony bolstered the Commonwealth's theory that Appellant brought the knife with him into Lantz's home, thereby establishing his specific intent to kill. In reference to a photograph of the kitchen that depicted a knife block with one knife missing, Lantz explained at trial that the knife was missing before she left for work on the day of the murder because her son had broken it months earlier when cutting an ice cream cake. *Id.* at 58. She further confirmed that the Commonwealth's Exhibit 22, a knife handle, and Exhibit 9, a knife blade, did not together constitute the knife missing from her knife block. *Id.* at 59. Appellant submits that in a prior statement given to police,

Lantz indicated there were no empty slots in her knife block immediately prior to the murder, thereby suggesting that the knife used in the murder was taken from Lantz's kitchen and not brought to the scene by Appellant. He argues that trial counsel was ineffective for failing to object to Lantz's testimony on this ground or to cross-examine her on this critical point.

Appellant fails to acknowledge, however, that trial counsel pointed out this inconsistency in Lantz's testimony through the cross-examination of Police Detective Scott Koehle. During his cross-examination of Detective Koehle, trial counsel elicited that Lantz reported to police previously that there should have been no empty slots in her knife block. N.T., Apr. 29, 2006, at 64. Appellant further ignores that trial counsel later emphasized in his closing argument to the jury the disparity between Lantz's testimony and her prior statement to police on this particular point. N.T., May 2, 2006, at 12 (where trial counsel asserts, "[i]s it possible that on that day [Lantz] forgot that the knife was broken and there was a space there? Yes. Is it also possible that [Lantz] realized that's a problem in this case and doesn't support [the Commonwealth's] theory and [Lantz] has slanted her testimony to some degree ...").

The Commonwealth contends that Appellant's claim fails for lack of arguable merit because trial counsel disclosed to the jury the very inconsistencies in Lantz's testimony that he is faulted for failing to present. It further contends that trial counsel made a tactical decision not to cross-examine Lantz regarding said discrepancy so as not to afford her the opportunity to rehabilitate herself while on the stand. Instead, the Commonwealth submits, trial counsel cross-examined Detective Koehle regarding the statement she had given to police, and later emphasized the contradictions in her statements during closing arguments. Finally, the Commonwealth concludes there is no evidence that trial counsel's tactical decision in this regard so undermined the truth determining process that no reliable adjudication of guilt could have taken place.

The PCRA court rejected Appellant's ineffectiveness claim, holding that trial counsel had a tactical basis for not objecting to Lantz's testimony and not cross-examining her regarding the inconsistent statements, and, instead, bringing Lantz's contradictions to light through the cross-examination of Detective Koehle and emphasizing the same to the jury in closing arguments.

The PCRA court's ruling is supported by the record and is free of legal error. As noted cogently by the Commonwealth, trial counsel did not ignore the paradoxes in Lantz's testimony regarding whether a knife was missing from her kitchen, but elicited such evidence from a different witness and accentuated the disparity in testimony in the closing argument. Further, Appellant has failed to demonstrate that the manner by which trial counsel impeached Lantz's testimony indirectly through the testimony of Detective Koehle lacked a strategic basis or prejudiced him in any way. Accordingly, Appellant's ineffectiveness claim fails.

## VI. Trial Counsel Ineffectiveness regarding Prosecutorial Misconduct

■ Appellant argues that trial counsel was ineffective for failing to object when the prosecutor mischaracterized the evidence during closing arguments by asserting that his stab wounds to the victim's heart and jugular vein were the last two fatal wounds inflicted. He submits there was no evidence establishing the sequence of the stab wounds, and that the prosecutor acted inappropriately by requesting the jury to speculate on this important issue. Appellant relies on the following excerpt:

> I'm not keeping count of all the facts that point to an intentional murder. He stabs her twelve (12) times. Are they raised stabs or is it because as Jeremy said his mom is moving around the room trying to get away and he just can't quite get a fatal blow in until finally he does strike her. Think about it, the last two (2) ... the most serious blows have to be the last two (2). How do you know? Speculation on my part. I wasn't there. You weren't there but the

knife was in her back. That had to be the last one. She's moving around the room trying to get away from him. The other stabs are superficial, although painful, but the one that immobilizes her is the next to the last one. The one that he stuck there that went through her. Now, she's not able to move anymore and that's when she starts to go down and that's when he sticks her in the back and that's why all that blood is in that corner and not on his jacket. But those aren't raised stabs; those are deliberate attempts to strike a fatal blow and when she's still moving, he hasn't done it yet so he's gotta keep striking until he finally does strike the lethal blow. Rage or deliberate attempt to make sure he struck a lethal blow to kill that woman.

N.T., May 2, 2006, at 37–38.

Focusing on the use of the term "speculation" in the above-cited reference, Appellant argues that the prosecutor erred by urging the jury to base its verdict on conjecture. He contends that trial counsel should have sought an instruction directing the jury to disregard any argument calling for speculation as to what may have happened at the time of the murder, and to base its verdict only upon evidence of record. Appellant submits that the prosecutor's theory regarding the sequence in which the wounds were inflicted was not based upon evidence of record or reasonable inferences therefrom because the Commonwealth's forensic pathologist, Dr. Vimal Mittal, testified that he could not ascertain the sequence of the stab wounds. Finally, Appellant asserts, without explanation, that he was prejudiced by the prosecutor's mischaracterization of the evidence because the sequence of the stab wounds was central to the Commonwealth's case.

The Commonwealth responds that trial counsel was not ineffective for failing to raise a meritless objection to the prosecutor's comments, which were based upon the evidence. It contends that the prosecutor merely acknowledged that he was not present during the murder, and drew legitimate inferences from the testimony of Dr. Mittal and the victim's son, Jeremy, who observed the fatal stabbing. Dr. Mittal's testimony indicated that Appellant administered ten superfi-

cial wounds to the victim and two deep stab wounds, one of which was the lethal blow striking the heart and jugular vein, and the other was the final stab in the back. The Commonwealth asserts that this testimony is consistent with Jeremy's testimony that that his mother was moving around the kitchen trying to evade Appellant's lethal blows, while sustaining several superficial stab wounds. Jeremy saw his mother fall to the floor near the door where Appellant entered the kitchen and then witnessed Appellant stab her a final time, leaving the knife protruding from her back. This testimony of Dr. Mittal and Jeremy, the Commonwealth contends, served as the evidentiary basis for the prosecutor's comments that it was the final two stab wounds that actually killed the victim.

Significantly, the Commonwealth discounts Appellant's contention that the sequence of the stab wounds was critical to the Commonwealth's case. The essential fact establishing first degree murder, it maintains, is that Appellant continued to stab the victim until she collapsed, thereby demonstrating his specific intent to kill; the determination of which particular stab wound was fatal was inconsequential. The Commonwealth posits that Appellant's claim focuses exclusively on the prosecutor's use of the term "speculation" and argues, without regard to the context of the statement, that the prosecutor asked the jury to base its verdict on speculation. Nothing could be further from the truth, it asserts, as it has demonstrated that the prosecutor's statements amounted to fair comment on the evidence.

Accordingly, the Commonwealth concludes that because there was no legal basis for trial counsel to lodge an objection, the claim that trial counsel was ineffective for failing to object fails for lack of arguable merit. It further maintains that Appellant has failed to demonstrate that there is a reasonable probability that the outcome of the trial would have been different had trial counsel objected to the prosecutor's comments.

The PCRA court agreed with the Commonwealth and rejected Appellant's claim for lack of arguable merit, holding that the challenged statements of the prosecutor were based

upon inferences from Dr. Mittal's testimony. The court further emphasized that it instructed the jury that statements and arguments of counsel were not evidence and were not binding upon the jury.

It is well-settled that a prosecutor is free to present his argument with logical force and vigor so long as there is a reasonable basis in the record for the prosecutor's remarks. *Commonwealth v. Tedford,* 598 Pa. 639, 960 A.2d 1, 32 (2008). Further, reversible error arises from a prosecutor's comments only where the unavoidable effect is to prejudice the jurors, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict. *Id.* at 33. To succeed on a claim of ineffective assistance of counsel based on trial counsel's failure to object to prosecutorial misconduct, the defendant must demonstrate that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the United States Constitution's Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. *Id.* at 29.

The PCRA court's determination that Appellant has failed to satisfy his burden in this regard is supported by the record and is free of legal error. The record supports the PCRA court's finding that the challenged prosecutor's statements were grounded in the testimony of Dr. Mittal. To reiterate, the prosecutor stated in closing argument that the most serious wounds were likely the last two stab wounds that Appellant inflicted, one of which immobilized the victim and the last wound in the victim's back where the knife was later recovered. This assertion was a reasonable inference from the record as Dr. Mittal explained that the victim had twelve stab wounds, several of which were superficial and one that was significant enough to have caused the victim's death as it damaged the heart and the left jugular vein. N.T., Apr. 29, 2006, at 123. Dr. Mittal agreed that the fact that the knife had been left in the wound in the victim's back did not

alter his medical conclusion. *Id.* at 128. Accordingly, the prosecutor's argument to the jury was based upon reasonable inferences from the evidence. Further, we agree with the Commonwealth that, contrary to Appellant's contention, the prosecutor's use of the word "speculation" did not urge the jury to base its verdict on conjecture, but rather was a colloquial way of saying that the prosecutor was not in the room at the time the fatal stabbing was committed. Under these circumstances, we conclude that the prosecutor's comments were not improper, and counsel cannot be deemed ineffective for failing to lodge a meritless objection. *See Commonwealth v. Jones,* 912 A.2d at 278 (holding that counsel cannot be deemed ineffective for failing to pursue a meritless claim).

## VII. Appellate Counsel Ineffectiveness

In his next issue, Appellant contends that appellate counsel was ineffective for failing to include eleven enumerated issues in post-verdict motions and in his appellate brief on direct appeal.[15] He argues that he was denied his

15. The issues Appellant faults appellate counsel for failing to raise are summarized below:

(1) The trial court erred by failing to *sua sponte* suppress a temporary PFA order obtained from Appellant's residence without a warrant.

(2) The trial court erred by denying the motion to dismiss allegations that Appellant was subject to a PFA order at the time of the offense because he had no actual or constructive notice of the order.

(3) The trial court erred by admitting the 911 recordings at trial, which contained background comments made by children of the decedent.

(4) The trial court erred by admitting the testimony of Commonwealth witnesses (Case and Clover), whose criminal records had not been provided to the defense.

(5) The trial court violated the Sixth and Fourteenth Amendments to the United States Constitution when it appointed attorneys who were not capital case qualified.

(6) The trial court erred by denying Appellant's motion for recusal where the trial court judge presided over the PFA proceeding against Appellant.

(7) The trial court erred by denying his motion for a change of venue due to prejudicial pretrial publicity.

(8) The trial court violated Appellant's Fifth Amendment rights when it failed to colloquy him on the record concerning his right to remain silent.

right to present these claims and to have an appellate court review them. Without addressing the arguable merit of each claim or demonstrating how he was prejudiced by appellate counsel's failure to present the issues, Appellant makes the general assertion that appellate counsel lacked a reasonable basis for omitting the proffered claims. In Appellant's view, capital counsel "has a constitutional duty to raise *all* potentially meritorious claims-even those that the attorney may consider 'weak'." Brief for Appellant at 24 (emphasis in original). Appellant also suggests that appellate counsel was required and failed to file a *Turner/Finley* letter, explaining why he was not raising the eleven issues Appellant identified.[16] He requests that this Court grant him permission to brief the waived issues so that they may be decided on the merits.

The Commonwealth contends there is no law supporting Appellant's contention that he has the right to raise on appeal all claims of his choosing, regardless of whether appellate counsel finds them supportable by the law. It submits that Appellant should be denied relief because he has failed to

(9) The Commonwealth failed to obtain, preserve, and test for DNA the knife block found in the kitchen.

(10) The trial court erred by instructing the jury that it could not find Appellant guilty of manslaughter if it found him guilty of murder without telling the jury the converse.

(11) The trial court permitted the Commonwealth to commit misconduct by referencing "blood spatter" without expert testimony establishing the same.

16. The cases of *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988), and *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213 (1988), establish the procedure for withdrawal of court-appointed counsel in collateral attacks on criminal convictions. Prior to withdrawal, counsel must conduct an independent review of the record and prepare a "no-merit" letter detailing the nature of the review that counsel conducted, listing the issues the petitioner wants to raise, and explaining why such issues lack merit. *Turner* and *Finley* do not address the withdrawal of appellate counsel on direct appeal, which is governed by *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) (describing the requirements of an *Anders* brief that is filed when appointed counsel seeks to withdraw from a direct appeal based on a determination that the issues presented are wholly frivolous). Significantly, none of these three cases delineate a procedure for canvassing issues to be presented in an appellate brief filed by counsel who continues to represent the defendant, as occurred herein.

establish any of the three prongs necessary to demonstrate appellate counsel ineffectiveness. Further, the Commonwealth refutes Appellant's contention that appellate counsel had an obligation to file a *Turner/Finley* letter because such document is only necessary where appellate counsel, in an appeal from the denial of PCRA relief, is not filing an appellate brief or is seeking to withdraw from the case. Here, the Commonwealth maintains, Appellant's challenge is not directed at PCRA counsel, but rather challenges the performance of counsel on direct appeal, who filed an appeal on Appellant's behalf, raising the strongest appellate issue available, i.e., a challenge to the sufficiency of the evidence supporting the Section 9711(d)(18) aggravator (commission of the killing while subject to a court order restricting his behavior towards the victim) on the ground that he never received formal notice of the PFA order. The Commonwealth concludes that appellate counsel's strategy of winnowing out the meritless claims had no adverse impact on the outcome of the appeal.

We agree with the Commonwealth that Appellant is not entitled to relief as he has failed to demonstrate any prong of the *Pierce* standard as it relates to appellate counsel's performance in failing to preserve the enumerated eleven issues. First, Appellant includes no substantive legal analysis of the underlying claims and, thus, has failed to demonstrate that the claims of appellate counsel ineffectiveness were of arguable merit. *Commonwealth v. Paddy*, 609 Pa. 272, 15 A.3d 431, 443 (2011) (holding that if the petitioner cannot prove the arguable merit of underlying claim, the derivative claim of appellate counsel ineffectiveness of necessity must fail).

Further, Appellant fails to demonstrate the unreasonableness of appellate counsel's strategy of raising his strongest issue on appeal, instead of a multitude of issues that had little likelihood of success. Appellant's position that capital counsel has a constitutional obligation to raise even "weak" claims on appeal is in direct contravention of case law establishing that "[t]he process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of

effective appellate advocacy." *Commonwealth v. Robinson,* 581 Pa. 154, 864 A.2d 460, 479 n. 28 (2004) (quoting *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986)). *Accord Jones v. Barnes,* 463 U.S. 745, 746, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("experienced advocates since time beyond memory emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

Finally, Appellant has failed to satisfy his burden of establishing a reasonable probability that the outcome of his appeal would have been different had appellate counsel pursued the issues he currently proffers. *Commonwealth v. Blakeney,* 631 Pa. 1, 108 A.3d 739, 750 (2014) (holding that "[t]o establish *Strickland/Pierce* prejudice in the appellate representation context, the petitioner must show that there is a reasonable probability that the outcome of the direct appeal proceeding would have been different but for counsel's deficient performance"). Accordingly, Appellant is not entitled to relief.

## XIII. Cumulative Error

■■■ In his final claim, Appellant contends that he has suffered cumulative prejudice as a result of the multiple instances of ineffective assistance of counsel that he has demonstrated throughout his brief. We have held that no number of failed ineffectiveness claims may warrant relief collectively if they fail to do so individually. *Commonwealth v. Elliott,* 622 Pa. 236, 80 A.3d 415, 450 (2013). As we have found no merit to any individual claim of ineffectiveness, there is no prejudice for this Court to consider in the aggregate.

## XIV. Conclusion

Having concluded that the PCRA court's conclusions are supported by the record and free of legal error, we affirm the PCRA court's order dismissing Appellant's petition.[17]

17. The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. *See* 42 Pa.C.S. § 9711(i).

Justices EAKIN, TODD, and STEVENS join the opinion.

Chief Justice SAYLOR and Justice TODD file concurring opinions.

Chief Justice SAYLOR, concurring.

I join the majority opinion, except for its treatment of the forfeiture-of-counsel issue in Part II. I obviously have reservations about this subject, as I joined Madame Justice Todd's dissenting opinion in *Commonwealth v. Lucarelli*, 601 Pa. 185, 971 A.2d 1173 (2009). Given the importance of the right to counsel, the *Lucarelli* dissent favored implementation of procedural safeguards relative to at least one strain of forfeiture, as are considered necessary in a number of other jurisdictions. *Id.* at 201–07, 971 A.2d at 1183–87 (Todd, J., dissenting); *cf. Commonwealth v. Means*, 454 Mass. 81, 907 N.E.2d 646, 661–62 (2009). *See generally* Sarah Gerwig–Moore, *Gideon's Vuvuzela: Reconciling the Sixth Amendment's Promises With the Doctrines of Forfeiture and Implicit Waiver of Counsel*, 81 Miss. L.J. 439, 452 (2012) (surveying various approaches employed by courts in addressing waiver and forfeiture scenarios).

In light of the above, I am circumspect about injecting a forfeiture rationale into a case at the appellate-review stage, where such forfeiture simply was not the basis for the disposition of the court of original jurisdiction. Rather, as the majority otherwise recognizes, the PCRA court's decision on the relevant point rested on its conclusion that Appellant expressly waived his right to counsel.

Justice TODD, concurring.

I join the Majority Opinion in full. I write separately to address Chief Justice Saylor's reference, in his concurrence, to my dissent in *Commonwealth v. Lucarelli*, 601 Pa. 185, 971 A.2d 1173 (2009). *See* Concurring Opinion at 431, 120 A.3d at 295 (Saylor, C.J.). As the majority herein discusses in Part II, in *Lucarelli*, this Court recognized the distinction between the waiver of the right to counsel and the forfeiture of the right to counsel, noting the former requires a knowing act

(and thus a colloquy before it may be found to have been waived), while the latter does not. Majority Opinion at 415–16, 120 A.3d at 285–86. My dissent in that case took little issue with those broad principles; rather, I disagreed that the defendant's conduct—his failure to obtain counsel in the nearly nine months leading up to his trial despite the ability to do so—constituted a forfeiture of the right to counsel, as the majority therein found. Nonetheless, I cited with approval cases in which the right to counsel was deemed to be forfeited, including where a defendant assaulted his lawyer. *See Lucarelli*, 971 A.2d at 1183–84 (Todd, J., dissenting) (discussing cases). Thus, my joinder in the forfeiture holding in the instant case, where counsel was brutally attacked by his client, is entirely consistent with my position in *Lucarelli*.