J-S09013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AMIN INGRAM, | |
| Appellant | No. 1722 EDA 2016 |

Appeal from the PCRA Order June 2, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009208-2009

BEFORE:  SHOGAN, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:          **FILED FEBRUARY 28, 2017**

Appellant, Amin Ingram, appeals from the order denying his timely first petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546.  We affirm.

This Court previously summarized the facts of the case as follows:

> On March 1, 2008, Alfred Green, Tarji Kirkaldy, and Miranda Teasley congregated at 1637 Staub Street, Philadelphia, to consume drugs.  Trial Ct. Op., 2/12/13, at 2.  Kirkaldy had purchased marijuana from the victim in this case, David Atkins ("Victim"), who lived next door at 1639 Staub Street.  Later, Kirkaldy called Appellant to purchase crack cocaine.  Appellant arrived at "1637 Staub Street with a Shacore Smith, sold the crack cocaine, and then went to 1639 in order to rob" Victim.  Green and Teasley watched Appellant and Smith go next door, saw Smith run from Victim's house, and then heard gunshots.

---

[*]  Retired Senior Judge assigned to the Superior Court.

In the early morning hours of March 1, 2008, Philadelphia police officers arrived at 1639 Staub Street. Victim's son was "running down the steps in some distress," and Victim lay dead with multiple gunshots to his head and body.

Shacore Smith was declared unavailable for trial and his preliminary hearing testimony was read into evidence at trial.[3] In it, he was asked about a statement he gave to homicide detectives in which he indicated that he had gone with Appellant to 1637 Staub Street, and then accompanied him next door to Victim's house, but had left just prior to the robbery and shooting. He ran home, and shortly thereafter Appellant came to his home as well and told Smith that he had shot Victim, and displayed approximately eight baggies of marijuana that he had taken from Victim's home. Appellant told Smith that he had shot Victim in front of a young boy and was not sure that Victim was dead, and then he left, returning a few minutes later to report that Victim was, in fact, dead.

[3] The preliminary hearing was held on July 15, 2009, approximately three years and four months prior to trial. **See** N.T. Trial, 11/14/12, at 137.

Also at trial, Victim's son testified that he saw a man shoot his father, and that then the man left, only to return minutes later and sho[o]t his father's prone body in the head. He then described the police coming to his house . . . .

[Trial Ct. Op., 2/12/13,] at 2–3. We note that at the time of trial, [V]ictim's son was eleven years old, and that the shooting occurred when he was six. He testified that the man who shot his father [had] a hoodie up on his head, and that he did not see the face of shooter.

The fired cartridge casings found at the scene were 9mm in caliber, and they were found to have been fired from the same gun . . . used in the shooting. On March 25, 2008, less than a month after the murder, Appellant was found with a .380

- 2 -

caliber semi-automatic handgun on his person. There was no warrant for his arrest for homicide at that time, and he was released. The parties stipulated that the gun found on Appellant's person was not the weapon used in the shooting of Victim. An arrest warrant was issued for Appellant on April 10, 2008. Appellant evaded capture until December 9, 2008.

[Trial Ct. Op., 2/12/13,] at 2–3.

The case proceeded to a jury trial on November 14, 2012.

During trial, in a restroom in the Criminal Justice Center, Appellant's mother offered two prosecution witnesses, Tarji Kirkaldy and Miranda Teasley, money in order to induce them not to identify Appellant as the shooter.

*Id*. at 3.

The jury found Appellant guilty of first-degree murder, robbery of Victim's marijuana, possession of an instrument of crime, and carrying a firearm without a license.[4] The trial court immediately imposed a mandatory life imprisonment sentence for first-degree murder and concurrent sentences on the remaining offenses. Appellant filed a timely post-sentence motion, which was denied.

[4] 18 Pa.C.S. §§ [2502, 3701,] 907(a), 6106(a)(1).

***Commonwealth v. Ingram***, 93 A.3d 521, 3435 EDA 2012 (Pa. Super. filed December 31, 2013) (unpublished memorandum) (some internal citations omitted).

Appellant filed an appeal to this Court, and we affirmed the judgment of sentence. ***Ingram***, 93 A.3d 521. The Supreme Court denied Appellant's petition for allowance of appeal. ***Commonwealth v. Ingram***, 94 A.3d 1008 (Pa. 2014).

As noted, Appellant filed a timely *pro se* PCRA petition on October 30, 2014. The PCRA court appointed counsel, who filed an amended petition on January 13, 2016. The Commonwealth filed a motion to dismiss on March 14, 2016, and the PCRA court entered its notice of intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907 on April 21, 2016. On June 2, 2016, the PCRA court denied relief and filed an opinion. Appellant filed a timely appeal to this Court. The PCRA court did not order the filing of a Pa.R.A.P. 1925(b) statement.

Appellant raises the following single issue on appeal:

I.  Was appellate defense counsel ineffective when counsel failed to raise the prompt/speedy trial issue on appeal from the judgment of sentence when trial defense counsel preserved this issue in the trial court and [the] record shows that the Commonwealth was responsible for 850 days for the delay of trial?

Appellant's Brief at 2.

When reviewing the propriety of an order denying PCRA relief, this Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. **Commonwealth v. Robinson**, 139 A.3d 178, 185 (Pa. 2016). The PCRA court's findings will not be disturbed unless there is no support for them in the certified record. **Commonwealth v. Lippert**, 85 A.3d 1095, 1100 (Pa. Super. 2014). Moreover, "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not

- 4 -

necessary." ***Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa. Super. 2008) (quoting ***Commonwealth v. Barbosa***, 819 A.2d 81 (Pa. Super. 2003)). "[S]uch a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." ***Commonwealth v. Mason***, 130 A.3d 601, 617 (Pa. 2015).

Appellant is alleging direct-appeal counsel's ineffective assistance for failure to raise a Pa.R.Crim.P. 600[1] issue on direct appeal.[2] Appellant's Brief at 6–10; Amended PCRA Petition, 1/13/16. To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. ***Commonwealth v. Stewart***, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*). A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any one of these prongs. ***Commonwealth v.***

_____

[1] The Pennsylvania Supreme Court rescinded former Pa.R.Crim.P. 600, in effect at the time of Appellant's pretrial incarceration, on October 1, 2012, and replaced it with current Rule 600, effective July 1, 2013. At the time of Appellant's pretrial incarceration, the rule required that a defendant be brought to trial within 365 days of filing a complaint. ***Commonwealth v. Solano***, 906 A.2d 1180 (Pa. 2006).

[2] The four issues raised in Appellant's *pro se* PCRA petition were the exact issues raised and rejected by this Court in Appellant's direct appeal, ***Ingram***, 93 A.3d 521, and thus, were previously litigated. 42 Pa.C.S. § 9544(a)(2) ("[A]n issue has been previously litigated if . . . the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue . . . .")

*Martin*, 5 A.3d 177, 183 (Pa. 2010). Counsel is presumed to have rendered effective assistance of counsel. *Commonwealth v. Montalvo*, 114 A.3d 401, 410 (Pa. 2015). We have explained that trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). "We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case." *Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (citing *Commonwealth v. Albrecht*, 720 A.2d 693, 701 (Pa. 1998)).

When determining whether Rule 600 was violated, the court first calculates the mechanical run date, which is three hundred sixty-five days after the complaint is filed. *Commonwealth v. Murray*, 879 A.2d 309, 313 (Pa. Super. 2005). The court then subtracts all excludable and excusable time to arrive at an adjusted run date. *Id*.

Appellant's basis for his claim is that the Commonwealth's continuances due to the unavailability of its key witness should not have been excludable time. Thus, he asserts the issue had arguable merit, appellate counsel lacked any reasonable basis for abandoning the issue on appeal, and Appellant was prejudiced by appellate counsel's failure. Appellant's Brief at 9–10. While Appellant merely reasserts his theory regarding why his motion to dismiss under Rule 600 should have been

granted, he fails to challenge, undermine, or assail the PCRA court's reasoning.

We have carefully reviewed the opinion of the PCRA court, considered the arguments of the parties, and evaluated the record in this case. The PCRA court cogently and succinctly explained why the issue lacked merit, and it supported its decision with relevant law. The record evidence supports the PCRA court's conclusions; thus, we will not disturb them. *Lippert*, 85 A.3d at 1100. Accordingly, appellate counsel cannot be found ineffective for failing to raise the meritless Rule 600 claim. Moreover, because the PCRA court could determine from the record that a genuine issue of material fact did not exist, an evidentiary hearing was not necessary. *Mason*, 130 A.3d at 617. Therefore, we rely on the June 2, 2016 opinion of the PCRA court and adopt it as our own.[3]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2017

___

[3] We direct the parties to attach a copy of the PCRA court opinion in the event of further proceedings in this matter.

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA  : CP-51-CR-0009208-2009
:
:
:
v.  :
:
:
:
AMIN INGRAM  :
:

## OPINION AND ORDER

**McDermott, J.**  **June 2, 2016**

### Procedural History

On November 19, 2012, after a jury trial, the Petitioner, Amin Ingram, was found guilty of First-Degree Murder, Robbery, Carrying a Firearm Without a License, and Possession of an Instrument of Crime ("PIC"). This Court immediately imposed the mandatory sentence of life imprisonment without parole for First-Degree Murder, and imposed concurrent sentences of six to twelve years imprisonment for Robbery, two to four years for Carrying a Firearm Without a License, and one to two years for PIC, for a total sentence of life imprisonment without parole.

On direct appeal, the Petitioner challenged this Court's denial of the Petitioner's motion to dismiss under the Rule 600 and its admission of prior bad acts and hearsay evidence. Appellate counsel abandoned the Rule 600 challenge on appeal and elected to pursue the Petitioner's alternate claims. On December 31, 2013, the Superior Court affirmed the judgment of sentence. On June 25, 2014, the Supreme Court denied the petition for Allowance of Appeal.

On October 30, 2014, the Petitioner filed a timely Post-Conviction Relief Act ("PCRA") petition. On January 13, 2016, the Petitioner, through appointed counsel, filed an Amended

A-1

Petition. On March 14, 2016, the Commonwealth filed a Motion to Dismiss. On April 21, 2016, this Court filed a Notice of Intent to Dismiss pursuant to Pa.R.Crim.P. 907. The Petitioner did not respond to this Court's 907 Notice.

## Facts

On direct appeal, the Superior Court adopted this Court's statement of the facts and summarized them as follows:

> On March 1, 2008, Alfred Green, Tarji Kirkaldy, and Miranda Teasley congregated at 1637 Staub Street, Philadelphia, to consume drugs. Kirkaldy had purchased marijuana from the [decedent] in this case, David Atkins [ ], who lived next door at 1639 Staub Street. Later, Kirkaldy called [Ingram] to purchase crack cocaine. [Ingram] arrived at 1637 Staub Street with a Shacore Smith, sold the crack cocaine, and then went to 1639 in order to rob [Atkins]. Green and Teasley watched [Ingram] and Smith go next door, saw Smith run from [Atkins'] house, and then heard gunshots.
>
> In the early morning hours of March 1, 2008, Philadelphia police officers arrived at 1639 Staub Street. [Atkins'] son was running down the steps in some distress, and [Atkins] lay dead with multiple gunshots to his head and body.
>
> Shacore Smith was declared unavailable for trial and his preliminary hearing testimony was read into evidence at trial. In it, he was asked about a statement he gave to homicide detectives in which he indicated that he had gone with [Ingram] to 1637 Staub Street, and then accompanied him next door to [Atkins'] house, but had left just prior to the robbery and shooting. He ran home, and shortly thereafter [Ingram] came to his home as well and told Smith that he had shot [Atkins], and displayed approximately eight baggies of marijuana that he had taken from [Atkins'] home. [Ingram] told Smith that he had shot [Atkins] in front of a young boy and was not sure that [Atkins] was dead, and then he left, returning a few minutes later to report that [Atkins] was, in fact, dead.
>
> Also at trial, [Atkins'] son testified that he saw a man shoot his father, and that then the man left, only to return minutes later and shot his father's prone body in the head. He then described the police coming to his house.
>
> We note that at the time of trial, [Atkins'] son was eleven years old, and that the shooting occurred when he was six. He testified that the man who shot his father [wore] a hoodie up on his head, and that he did not see the face of shooter.

2

The fired cartridge casings found at the scene were 9mm in caliber, and they were found to have been fired from the same gun used in the shooting. On March 25, 2008, less than a month after the murder, [Ingram] was found with a .380 caliber semi-automatic handgun on his person. There was no warrant for his arrest for homicide at that time, and he was released. The parties stipulated that the gun found on the [Ingram's] person was not the weapon used in the shooting of [Atkins]. An arrest warrant was issued for [Ingram] on April 10, 2008. [Ingram] evaded capture until December 9, 2008.

The case proceeded to a jury trial on November 14, 2012. During trial, in a restroom in the Criminal Justice Center, [Ingram's] mother offered two prosecution witnesses, Tarji Kirkaldy and Miranda Teasley, money in order to induce them not to identify [Ingram] as the shooter.

*Commonwealth v. Ingram*, 3435 EDA 2012 at 2–4 (Dec. 31, 2013) (non-precedential decision) (internal quotation marks and citations omitted).

## Discussion

Within his Amended Petition, the Petitioner raises a single issue for review, that appellate counsel was ineffective for failing to brief a challenge to this Court's denial of the Petitioner's Rule 600 motion to dismiss on the basis of a speedy trial violation.

To warrant relief based on an ineffectiveness claim, a petitioner must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006); 42 Pa.C.S. § 9543(a)(2)(ii). Appellate counsel is presumed to have rendered effective assistance. *Commonwealth v. Blakeney*, 108 A.3d 739, 749 (Pa. 2014).

To overcome the presumption, the Petitioner has to satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court of Pennsylvania has applied the *Strickland* test by looking to three elements, whether (1) the

3

underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and, (3) the petitioner has shown that he suffered prejudice as a result of counsel's lapse, *i.e.*, that there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Bennett*, 57 A.3d 1185, 1195–1196 (Pa. 2012) (*citing Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). If a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first. *Bennett*, 57 A.3d at 1195–1196.

In reviewing counsel's effectiveness in preparing a direct appeal, appellate courts "do not question whether there were other more logical courses of action which counsel could have pursued; rather, [they] must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) (citations omitted). "The process of 'winnowing out weaker arguments on appeal and focusing on' those likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Commonwealth v. Robinson*, 864 A.2d 460, 479 n. 28 (Pa. 2004) (*quoting Smith v. Murray*, 477 U.S. 527, 536 (1986)). Appellate counsel will not be held ineffective under *Strickland* unless the petitioner establishes a "reasonable probability that the outcome of his appeal would have been different had appellate counsel pursued the issue he currently proffers." *Commonwealth v. Staton*, 120 A.3d 277, 295 (Pa. 2015) (*citing Blakeney*, 108 A.3d at 750). Counsel will not be deemed ineffective for failing to raise a meritless claim. *Jones*, 912 A.2d at 278 (*citing Commonwealth v. Darrick Hall*, 701 A.2d 190, 203 (Pa. 1997)).

Former Rule 600, which was in effect at the time of the Petitioner's pre-trial incarceration, provided that a defendant be brought to trial within 365 days of filing a complaint.

*Commonwealth v. Solano*, 906 A.2d 1180, 1188 (Pa. 2006); Pa.R.Crim.P. 600.[1] In calculating the period for commencement of trial, any continuance granted at the request of the defendant or the defendant's attorney shall be excluded. Pa.R.Crim.P. 600(C)(3)(b). "The only occasion requiring dismissal is when the Commonwealth fails to commence trial within 365 days of the filing of the written complaint, taking into account all excludable time and excusable delay." *Commonwealth v. Colon*, 87 A.3d 352, 358 (Pa. Super. 2014) (*quoting Commonwealth v. Goldman*, 70 A.3d 874, 879–880 (Pa. Super. 2013) (internal quotations omitted)).

A court shall deny a Rule 600 motion to dismiss if, upon a hearing, it determines "that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth." Pa.R.Crim.P. 600(G). "[D]ue diligence is fact specific, to be determined case by case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Commonwealth v. Bradford*, 46 A.3d 693, 701–702 (Pa. 2012).

The standard of review in evaluating a Rule 600 claim is whether the trial court abused its discretion. *Commonwealth v. Brock*, 61 A.3d 1015, 1017 (Pa. 2013) (*citing Commonwealth v. Selenski*, 994 A.2d 1083, 1087 (Pa. 2010)). "An abuse of discretion is not merely an error of judgment, but in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will . . . discretion is abused." *Bradford*, 46 A.3d 693 at 700 (*quoting Selenski*, 994 A.2d at 1087). Scope of review is limited to the record evidence from the Rule 600 hearing and the findings of the lower court, viewed in the light most favorable to the prevailing party. *Selenski*, 994 A.2d at 1087 (*citing Solano*, 906 A.2d at 1186).

---

[1] On October 1, 2012, the Supreme Court rescinded former Rule 600 and replaced it with current Rule 600, effective July 1, 2013.

At the Rule 600 hearing, this Court determined that trial commenced within the amended run date. N.T. 11/14/2012 at 34–35. The complaint in this matter was filed on December 9, 2008. Therefore, the mechanical run date for trial was December 9, 2009, and by the time trial commenced on November 14, 2012, that date had clearly passed (1436 days). The adjusted run date in this matter, however, was December 13, 2012, and trial commenced twenty-nine days before that date.

The vast majority of time that had passed between the complaint and trial was excludable due to numerous defense continuances. On September 9, 2009, the Petitioner requested a continuance for further investigation (fifty-five days). On November 3, 2009, the Honorable Renee Cardwell Hughes granted a defense continuance to November 13, 2009 (ten days). On that date, the Honorable Steven R. Geroff scheduled trial for December 6, 2010 and ruled the intervening time as excludable (388 days) so that the Petitioner could conduct further investigation. On the scheduled trial date, the Petitioner requested and Judge Geroff granted a continuance to October 27, 2011, again ruling time as excludable (325 days). During the Rule 600 hearing before this Court, the parties stipulated all of the aforementioned periods were properly deemed excludable. N.T. 11/14/2012 at 30–32.

During the Rule 600 hearing, the Petitioner challenged Judge Geroff's ruling that the time between October 31, 2011 and September 17, 2012 was excludable, pursuant to the Commonwealth's request for a continuance to locate unavailable witness Shacore Smith. The Commonwealth's case relied, in part, on the testimony of eyewitness Shacore Smith. On April 8, 2009, a bench warrant was issued for Smith because he failed to appear at a preliminary hearing. N.T. 11/13/2012 at 38. In July 2009, police located Smith in Philadelphia and escorted him to court to testify at a preliminary hearing. *Id.* at 39.

6

Before the scheduled October 27, 2011 trial date, Philadelphia police combed the city to locate Smith, searching several different listed addresses. *Id.* at 43–46. After performing a Lexis Nexus search, authorities discovered that Smith fled to an address in Spartansburg, South Carolina. *Id.* at 46–48. Prior to the September 17, 2012 trial date, the Commonwealth enlisted the aid of the Spartansburg Sheriff's Department to locate Smith at the listed address, to no avail. *Id.* at 49–52. All subsequent efforts to locate Smith met with similar failure, and the Commonwealth ultimately elected to proceed without Smith's testimony. *Id.* at 53.

Because the Commonwealth exercised due diligence in attempting to locate Smith, Judge Geroff ruled the time between October 31, 2011 and the trial date of September 17, 2012 excludable (322 days).[2] The Petitioner presented no evidence to rebut Judge Geroff's holding. N.T. 11/14/2012 at 35. In the absence of evidence, this Court was bound by the prior ruling. This Court notes that the elapsed time between September 17, 2012 and the November 14, 2012 trial date (58 days) was attributable to the Commonwealth and neither excludable nor extendable. Accordingly, of the 1436 days that elapsed between the complaint and trial, 1100 were properly deemed excludable or extendable. The November 14, 2012 trial commencement date, therefore, occurred twenty-nine days before violating the Petitioner's speedy trial protection, and the Petitioner's claim therefore lacks merit.

Within his *pro se* PCRA petition, the Petitioner demanded a new trial on the basis that this Court improperly admitted: (1) evidence concerning unrelated criminal activity; (2) the preliminary hearing testimony of Shacore Smith; and, (3) testimony that the Petitioner's mother

---

[2] This Court recognizes that, since the Commonwealth requested the October 31, 2011 continuance, it may have been improper to characterize the intervening time as excludable, as opposed to extendable. This Court is not in a position to overturn Judge Geroff's holding. *See Commonwealth v. Lancit*, --- A.3d ---- (Pa. Super 2016) (*quoting Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995) ("[U]pon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.")). The distinction between the two terms does not alter this Court's Rule 600 analysis.

attempted to bribe a Commonwealth witness during trial. Our Superior Court addressed each of these *pro se* issues on appeal. Since PCRA Counsel is presumed to raise all meritorious issues within an Amended Petition, and since these issues have previously been litigated, this Court need not address the above *pro se* claims. *See Commonwealth v. Jette*, 23 A.3d 1032, 1044–1045 (Pa. 2011); *Commonwealth v. Baumhammers*, 92 A.3d 708, 714 (Pa. 2014).

For the foregoing reasons, a challenge on direct appeal to this Court's Rule 600 holding would not have succeeded on the merits. Accordingly, appellate counsel cannot be deemed ineffective for abandoning this meritless claim on appeal. The petition is hereby DISMISSED. Petitioner is hereby notified that he has thirty (30) days from the date of this Order and Opinion to file an appeal with the Superior Court.

BY THE COURT,

Barbara A. McDermott, J.

A-8