J-S01004-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRANCE XAVIER PEREZ | : | |
| | : | |
| Appellant | : | No. 1060 MDA 2020 |

Appeal from the PCRA Order Entered July 24, 2020
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0001046-2015

BEFORE:   LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:               **FILED MARCH 8, 2021**

Terrance Xavier Perez appeals from the order, entered in the Court of Common Pleas of Lycoming County, denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

We have previously set forth the underlying facts of this case as follows:

On May 11, 2015, a[n] altercation occurred between Rory Herbert and Jamil Bryant[,] the victim[,] due to Herbert's belief that [Bryant] had "shorted" him on a marijuana purchase.  Herbert recounted the event to his cousin, Brandon Love, who was a friend of [Perez] and [Bryant].  Thereafter, Herbert, Love, and [Perez] went to the home of Cosme Berrones.  Also present were Berrones's girlfriend, Brooke Dawson, and Jada Jenkins, the mother of Love's child.  Love and [Perez] spent the next several hours on Love's cell phone, texting and orally arguing with [Bryant].  Berrones testified that [Bryant] threatened to blow Love's head off and, in response, [Perez] stated to [Bryant], "if you have a problem with Love then you have a problem with me,

---

[*] Former Justice specially assigned to the Superior Court.

he's not the only one with a gun." Thereafter, [Perez] and Love left Berrones's home and, when they returned, [Perez] had a silver revolver. [Perez] asked Love and [] Jenkins to take him to get bullets for the firearm, but they declined.

[Perez] then started talking about shooting [Bryant]. [Perez] asked Love for a ride home, but Love refused. Ultimately, Berrones used Love's vehicle to drive [Perez] home, where [Perez], a state parolee, dropped off his electronic ankle monitor[,] in order to establish a false alibi regarding his whereabouts[, and] in anticipation of later shooting [Bryant]. [Perez] and Berrones returned to Berrones's home, where [Perez] debated [] getting ammunition for the silver revolver or a different gun for the purpose of killing [Bryant]. [Perez] asked Love for a ride to get another gun, and Love refused. Berrones thereafter drove [Perez] to a storage facility for the purpose of retrieving another gun. [Chris Hayman, driving a silver van,] met [Perez] at the entrance to the storage facility[. Perez] entered the silver van, after which[,] he and [Hayman] drove through the gates of the storage facility [and] reemerged [approximately five minutes later]. When [Perez] re-entered Love's vehicle, he was carrying a long black assault rifle. Berrones and [Perez] returned to Berrones's home with the assault rifle, whereupon [Perez] resumed talking about shooting [Bryant].

[Perez] then asked Love for a ride to [Bryant]'s house, and Love agreed. Love then drove [Perez] and Berrones to [Bryant]'s neighborhood, where they spent forty to forty-five minutes driving around looking for [Bryant]. Eventually, they saw [Bryant] on his front porch, and Love and Berrones dropped off [Perez] nearby [with] the assault rifle[.] Love and Berrones proceeded to a pre-arranged pick-up location on Grant Street[,] where they waited for [Perez]. Berrones heard what sounded like firecrackers before [Perez] ran back to Love's car, and said that he "shot that pussy in his muffin."[1] [Perez] warned Love and Berrones, "you pussies better not say anything."

[1] Berrones testified that "muffin" means "head," and that [Perez] was indicating that he shot [Bryant] in the head.

Upon return[ing] to Berrones's home, [Perez], still in possession of the assault rifle, went to the basement, and re-emerged without the weapon. [Perez then borrowed clothes and a backpack from Berrones to change his appearance.] As [Perez] left Berrones's

home, Berrones heard him say "let me know when that pussy dies, I'll feel better at night."

Shortly thereafter, Berrones found the assault rifle in the rafters of his basement. . . . Berrones later consented to a search of his home, [] led police to the weapon . . . and confirmed that [Perez] used [it] to shoot [Bryant].

\* \* \*

[Perez]'s mother, Sabina Kent, was shown a photograph of the assault rifle recovered from Berrones's basement, and identified it as belonging to [Perez]. [Kent] had last seen the assault rifle one week before the murder in the home she shared with [Perez]. [Kent also testified at trial regarding her knowledge of the contents of a duffel bag wherein Perez kept the assault rifle.]

\* \* \*

[Perez] was charged with criminal homicide, criminal conspiracy (homicide), persons not to possess firearms, and related offenses for [Bryant]'s murder. The persons not to possess firearms charge was severed before trial. On November 1, 2016, a jury found [Perez] guilty of first-degree murder, criminal conspiracy [to commit] homicide[], and related charges. Thereafter, the trial court found [Perez] guilty of persons not to possess firearms. On November 1, 2016, the trial court sentenced [Perez to a life sentence without the possibility of parole and consecutive sentences aggregating to an additional twenty-five to fifty years' incarceration. Perez] filed post-sentence motions which were denied by operation of law.

*Commonwealth v. Perez*, 486 MDA 2017, at \*\*1-12 (Pa. Super. filed Nov. 29, 2018) (unpublished memorandum) (internal citations, brackets, and footnote omitted). On November 29, 2018, this Court affirmed Perez's judgment of sentence on direct appeal, *id.* at \*49, and our Supreme Court denied review. *Commonwealth v. Perez*, 854 MAL 2018 (Pa. 2019). Accordingly, Perez's sentence became final on July 16, 2019. *See* 42 Pa.C.S.A. § 9545(b)(3); U.S. Sup. Ct. R. 13.

On August 23, 2019, Perez filed a *pro se* petition under the PCRA. The court appointed Jeana Longo, Esquire, who filed an amended petition on November 14, 2019, wherein she advanced a claim of ineffective assistance of trial counsel for failure to preserve Perez's claim of improperly admitted evidence. On January 2, 2020, the court granted Perez's request for an evidentiary hearing, and held that hearing on July 6, 2020. The PCRA court described what transpired at the evidentiary hearing as follows:

> Chief Public Defender [Nicole] Spring[, Esquire] testified at [] the evidentiary hearing. . . . Both Spring[, then serving as First Assistant Public Defender,] and Joshua Bower, Esq[uire,] were assigned to handle [Perez]'s case. . . . After trial, Spring was solely responsible for the post-sentence motion[] and [Perez]'s appeal. One of the issues Spring raised [] was [the fact that] the trial court allow[ed] the Commonwealth to introduce [that the "ugly gun"[1] was among] the contents of a duffel bag[ via Kent's rehabilitative testimony. Perez]'s [m]otion to [e]xclude [t]estimony regarding the "ugly gun" was initially granted[, the court reasoning] that the prejudicial effect of an additional gun outweighed [its] probative value. At trial, Bower cross[-]examined [] Kent [] regarding the contents of the duffel bag[, where Perez's assault rifle was located]:
>
> > Q. Now, I want to talk about the gun. You said that you had seen that gun about a week ahead of time before the shooting?
> >
> > A. Yes.
> >
> > Q. Do you recall telling the police that in that bag, in addition to a towel and bullets, there would be a scope?

---

[1] Kent used the term "ugly gun" at trial, and that term has been continuously used throughout the history of this case to refer to a specific revolver. The "ugly gun" has no connection to this case except that it was located in the duffel bag with the assault rifle that Perez fired at Bryant. For clarity and consistency, this Court will continue to use the term.

- 4 -

A. Yes.

Q. And that was kept in the bag?

A. Yes.

Q. There [was] also a tripod?

A. Yes.

Q. That the gun would sit on?

A. Yes, it was.

Q. That you thought would be in the bag?

A. Yes, I did.

\* \* \*

Q. And you told them that the scope on the gun we saw in Commonwealth's No. 7 was broken?

A. Yes.

Q. Did you see a scope on Commonwealth's Exhibit 7? If [] we could put 7 back up again. There is not a scope there?

A. That's how I identified the gun[,] because there was no scope there.

Q. And you didn't see a scope in the bag?

A. No.

[N.T. Jury Trial, 10/27/16, at 15-19.] Following this testimony[,] the Commonwealth requested a sidebar [] to discuss introduction of the "ugly gun," claiming [Perez] had opened the door through his cross-examination [of Kent]. The [Commonwealth] argued:

I believe that [Perez] has opened the door to other items that were, in fact, in the bag. . . . In light of the fact that [Perez] cross[-examined Kent regarding whether] the [duffel] bag was missing a scope and tripod[, which] suggest[ed] that [Kent] was mistaken about the items in the bag, [the Commonwealth] believe[s] it would be appropriate to rehabilitate [Kent] by her also being able to positively identify the ["ugly gun"] that [was] found in the

bag, which the [c]ourt had previously precluded [the Commonwealth] from doing.

The [c]ourt agreed with the Commonwealth that the questions [Perez] asked on cross-examination enabled [it] "to get back into the issue of whether or not [Kent] identified something properly in the bag," which included the "ugly gun." Spring testified at the evidentiary hearing that she included the "ugly gun" issue in both her post[-]sentence motion[] and [Pa.R.A.P. 1925(b)] statement, but did not brief the issue on appeal. In the handling of her twenty to fifty homicide appeals while at the Public Defender's [O]ffice, Spring stated that she typically focuses on what she believes are the strongest issues[,] and often [] reduce[s] the issues between [the Rule 1925(b) statement] and [the corresponding appellate] brief[,] to not dilute th[e] stronger issues. In [Perez's direct appeal,] Spring reduced the issues from twelve to seven[, and did not include the "ugly gun" issue. Nevertheless,] Spring stated that she should have included [it].

PCRA Court Opinion, 7/24/20, at 2-4 (internal citations and footnotes omitted).

On July 24, 2020, the PCRA court dismissed Perez's petition by order with an accompanying opinion. *See* Opinion and Order, 7/24/20. Perez filed a notice of appeal on August 20, 2020, and an appellate brief on September 29, 2020.[2]

On appeal, Perez presents one issue for our review: "[w]hether the [PCRA] court erred in failing to grant a claim of ineffectiveness of counsel when counsel was ineffective for waiving [Perez]'s right to appeal the admission of inadmissible evidence." Appellant's Brief, at 6. Specifically,

_____

[2] After our grant of an extension of time to file the Commonwealth's reply brief, *see* Order, 10/29/20, the Commonwealth, instead, filed a notice of its intent to rely on the opinion and order of the PCRA court, and declined to file its appellate brief. *See* Commonwealth's Letter, 11/30/20.

Perez claims that trial counsel deprived him of his right to appeal the "ugly gun" issue by failing to raise it in his appellate brief, and that he is entitled to a restoration of his direct appeal. ***See*** Appellant's Brief, at 16.

The standard of review in PCRA appeals is limited to a determination of whether the PCRA court's findings are supported by the record and free from legal error. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). The PCRA court's factual determinations are entitled to deference, but legal determinations are subject to plenary review. ***Id.***

To obtain relief based on a claim of ineffective assistance of counsel, a PCRA petitioner must establish: (1) the underlying claim is of arguable merit; (2) there was no reasonable basis for counsel's action or failure to act; and (3) a resultant prejudice to the petitioner—i.e., but for counsel's error, there is a "reasonable probability the result of the proceeding would have been different." ***Commonwealth v. Treiber***, 121 A.3d 435, 444 (Pa. 2015). Failure to satisfy any of the three prongs is fatal to a claim of ineffective assistance of counsel. ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). We presume counsel was effective, and the petitioner has the burden to prove otherwise. ***See Commonwealth v. Williams***, 570 A.2d 75, 81 (Pa. 1990). After review, we agree with the PCRA court's analysis and conclude that Perez's claim is meritless.

In its opinion accompanying the order dismissing Perez's petition, the PCRA court reasoned that:

[Perez] was not prejudiced by [Attorney Spring's] omission [of the "ugly gun" claim in Perez's appellate brief on direct appeal]. As the Commonwealth pointed out at the evidentiary hearing, the Pennsylvania Superior Court has previously held that

> **the properly admitted and uncontradicted independent evidence of [Perez]'s guilt was so overwhelming, and the prejudicial effect of the ostensibly erroneous admission** of Agent Kontz's limited testimony regarding the scope and results of the investigation **so insignificant by comparison, that any error could not have contributed to the verdict.** Multiple witnesses testified as to the day-long feud involving [Perez], Love, and [Bryant]: [Perez]'s statements regarding his intent to shoot [Bryant]; [Perez's] unsuccessful efforts to obtain ammunition for the silver revolver; [Perez's] retrieval of the assault rifle and ammunition from the storage facility; and [Perez's] statements confirming [] he [] shot [Bryant]. The jury was also presented with DNA and ballistics evidence that linked [Perez] to the murder weapon and the ammunition used to shoot [Bryant].

[] **Perez**, 486 MDA 2017, [at] *8 ([] finding the introduction of other evidence was harmless error [and did not contribute to the verdict beyond a reasonable doubt]).

The Superior Court reached this conclusion without taking into consideration the "ugly gun" introduced by Kent. Therefore, [Perez] would not have been prejudiced, even if its introduction was improper.

PCRA Court Opinion, 7/24/20, at 6 (emphasis added).

Here, we agree with the PCRA court that Perez has failed to establish prejudice—that but for Attorney Spring's omission, a reasonable probability exists that Perez's conviction would not stand. **See Treiber**, **supra**. Indeed, as the PCRA court correctly points out, this Court on direct appeal, without taking into consideration Perez's now complained-of admitted evidence, found that his conviction resulted from such overwhelming evidence of guilt that any

error in the conviction withstood constitutional attack. **See Commonwealth v. Story**, 383 A.2d 155, 162-63 n.12 (Pa. 1978) (standard for determining whether error involving state law is harmless is same as federal constitutional standard, which "reflects a fundamental belief that once error has been established, it is far worse to conclude incorrectly that the error was harmless than it is to conclude incorrectly that error was reversible").  Given that the complained-of evidence did not contribute to this Court's harmless error analysis on direct appeal, Perez has failed to prove how the result of the proceeding could have been different.[3]  Therefore, Perez's ineffective assistance of counsel claim fails.[4]  **See Spotz**, **supra**.  Consequently, the

---

[3] Perez argues the Commonwealth's only reason to introduce the "ugly gun" was to "improperly prejudice the jury and to show that Perez had a propensity for criminal behavior in violation of [Pa.R.E. 404(b)(1)]. . . .  The trial court [acknowledged, when it ruled to exclude the "ugly gun" pre-trial,] that ["the jury should not think Perez] had one gun[, so] he must have had the other gun[.]"  Appellant's Brief, at 19-20.  Here, we are not persuaded that admission of the "ugly gun" undermines confidence in Perez's convictions, especially where Perez has failed to connect such an attenuated allegation regarding the jury's improper consideration of propensity evidence with any explanation of how the proceeding would have come out differently.  **See Commonwealth v. Jones**, 210 A.3d 1014, 1018-19 (Pa. 2019) ("In the context of a post-conviction challenge to counsel's stewardship, prejudice is established where the truth-determining process was so undermined that no reliable adjudication of guilt or innocence could have taken place, i.e. there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. . . .  **[A] speculative or attenuated possibility of a different outcome is insufficient** to undermine confidence in the outcome.") (citations omitted; emphasis added).

[4] To the extent Perez claims that Attorney Spring had no reasonable basis for omitting the "ugly gun" argument from Perez's direct appellate brief, **see** Appellant's Brief, at 21-22, we find that argument meritless.  **See**

- 9 -

PCRA court's order is supported by the record and free of legal error. ***See***

***Johnson***, ***supra***.

Order affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/08/2021

---

***Commonwealth v. Koehler***, 36 A.3d 121, 132 (Pa. 2012) ("Courts should not deem counsel's strategy or tactic unreasonable unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.") (citation and quotation marks omitted); ***see also Commonwealth v. Stanton***, 120 A.3d 277, 294 (Pa. 2015) ("[t]he process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") Here, Perez has not shown that including the "ugly gun" claim in his appellate brief offered a potential for success substantially greater than the course Attorney Spring actually pursued, especially where we have already found that, when considering the evidence proffered at trial, minus the "ugly gun," the Commonwealth proved Perez's guilt beyond a reasonable doubt. ***See Perez***, 486 MDA 2017, at *8.