J-A20045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT PALMER | : | |
| | : | |
| Appellant | : | No. 2062 EDA 2021 |

Appeal from the PCRA Order Entered October 7, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010047-2015

BEFORE: BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED AUGUST 23, 2022**

Robert Palmer (Palmer) appeals from the October 7, 2021 order of the Court of Common Pleas of Philadelphia County (PCRA court) dismissing his petition pursuant to the Post-Conviction Relief Act (PCRA).[1]  We affirm.

## I.

## A.

We glean the following facts from the certified record.  In July 2015, Danielle Kelsey (Kelsey) was shot once in the back while driving down 17th Street in Philadelphia at approximately 11:00 p.m.  Neither she nor the two

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541 et seq.

passengers in her vehicle saw the shooter and she did not know Palmer. Kelsey suffered serious injuries and was hospitalized for several weeks.

Officers reported immediately to the scene and recovered fired cartridge casings and a baggie containing vials of crack cocaine near the corner of 17th Street and Susquehanna Avenue. They did not locate any eyewitnesses. Subsequent testing revealed Palmer's DNA on the baggie containing the narcotics.

The next morning, Detective James Wearing (Detective Wearing) located two surveillance cameras capturing two angles outside of a deli on the corner of 17th Street and Susquehanna Avenue. One of the cameras captured an individual wearing a dark-colored jacket walking in front of the deli at approximately 11:00 p.m. The individual lifted his arm in a "shooting-type position" while facing in the direction of Kelsey's vehicle and then left the scene. Notes of Testimony, 8/17/16, at 84.

Detective Wearing continued to examine the video footage from earlier in the day and identified a thin black male with a short afro-style haircut who appeared to be the same person as the shooter. He first appeared at 8:12 p.m. and was wearing dark shorts with white stitching down the sides, a light-colored shirt with a distinctive eyeball on the front, dark sneakers and white socks pulled up his shins. The same individual walked back and forth near the deli and appeared again on the cameras at 8:16 p.m., 8:19 p.m., 8:22 p.m., 8:23 p.m., 9:50 p.m. and 10:00 p.m.. At 10:26 p.m., he appeared on the

camera again, this time wearing a dark-colored jacket over his t-shirt. Detective Wearing testified that even though the jacket covered the t-shirt in the shooting portion of the video, the individual "kind of like [swung] his arms in an exaggerated motion. He has like [a] strut about him." *Id.* at 89-90.

Coincidentally, when detectives exited the deli after watching the surveillance video, Palmer was standing across the street wearing the distinctive eyeball t-shirt. Detective Wearing also observed that he matched the individual on the video in his face, hair and build and had the same "strut." *Id.* The detectives immediately placed him under arrest.

Detective Michael Rocks (Detective Rocks) then interrogated Palmer about the shooting. After viewing the surveillance video, Palmer admitted that he was depicted with the eyeball t-shirt earlier in the night but denied that he was the individual who made the shooting motion at 11:00 p.m. When informed about the narcotics recovered from the corner, Palmer admitted that he had dropped them there earlier in the evening. He then asked Detective Rocks "what his bail would be if he shot this girl by accident." *Id.* at 137.

A search of Palmer's residence yielded a pair of black high-top Nike sneakers like those seen in the videos. However, officers did not find the hooded sweatshirt or cutoff track pants that the individual in the video had worn. They also did not recover a firearm or ammunition.

Following a jury trial, Palmer was convicted of two counts of aggravated assault, carrying a firearm without a license, carrying a firearm on the public

streets of Philadelphia, and two counts of recklessly endangering another person.[2] One count of aggravated assault identified Kelsey as the victim and the other count identified a "John Doe" victim, as the Commonwealth argued that Palmer had intended to shoot an unidentified victim but had hit Kelsey by accident.

**B.**

Palmer proceeded to sentencing on October 28, 2016. Based on his Prior Record Score (PRS) of one, the standard range of the sentencing guidelines for aggravated assault causing serious bodily injury to Kelsey was 60 to 78 months' incarceration. The standard range for the aggravated assault of the John Doe victim was 48 to 60 months' incarceration.

The Commonwealth began by describing Palmer's juvenile court record. He had received a 90-day commitment for a single offense involving possession of a firearm but remained under supervision for three years because he was unable to ever complete the requirements for release. Palmer had failed to follow curfew and meet with his probation officer, had attempted to use someone else's urine for a drug test, missed school and had issues with his home detention worker and Vision Quest staff. He resisted psychiatric treatment, denied that he had problems and informed staff and his probation

---

[2] 18 Pa.C.S. §§ 2702(a), 6106(a)(1), 6108 & 2705. Judgment of acquittal was granted on two counts of attempted murder. 18 Pa.C.S. § 901(a).

officer that he would return to his previous lifestyle when released. The Commonwealth argued that Palmer had not taken his charges seriously throughout the pendency of the instant case, laughing in open court when the maximum sentences were recited. It argued that despite his low PRS, he had not demonstrated an ability to change. It highlighted the seriousness of the offense and requested a sentence of ten to 20 years of incarceration.

Palmer argued that there was a single victim in the case and that a sentence of five to ten years, which was in the standard range of the guidelines, would be appropriate. He argued that his juvenile record merely reflected that he had been "a teenager with a bad attitude." Notes of Testimony, 10/28/16, at 15. He had struggled with mental health issues but wanted to be a good father to his children and improve himself. He also pointed out that he had support from his mother, who was present at sentencing and throughout the trial.

The trial court then reviewed a presentence investigation report (PSI) and the details of Palmer's juvenile record, including his difficulties with supervision, non-compliance and threatening and violent behavior while in placement. He earned a high school diploma and worked as a janitor following his discharge from placement. At the time of sentencing, he was 25 years old and had one prior conviction. He was raised by both parents and had a good home life. He had a two-year-old child and a ten-month-old child. He had earned a vocational certificate but did not have formal employment. He was

diagnosed with bipolar disorder, depression and anxiety and had received outpatient treatment for two years. The trial court also noted that it had personally observed Palmer's defiant and oppositional attitude in court throughout the proceedings and believed that he did not take the charges or his behavior seriously. Finally, it concluded that Palmer had not shown remorse for his actions, and that by firing ten shots down a city street, he had avoided a homicide charge by pure luck.

Accordingly, the trial court sentenced Palmer as follows:

- Aggravated assault (Kelsey) – 5 to 10 years' incarceration

- Aggravated assault (Doe) – 4 to 8 years' incarceration, consecutive

- Carrying a firearm without a license – 1 to 2 years' incarceration, concurrent

- Carrying a firearm on the public streets of Philadelphia – no further penalty

- Two count counts of recklessly endangering another person – 1 to 2 years' incarceration each, concurrent

The aggregate sentence was nine to 18 years of incarceration. Palmer filed a timely post-sentence motion seeking modification of his sentence, which the trial court denied.

Palmer timely appealed and this Court affirmed the judgment of sentence. *Commonwealth v. Palmer*, 192 A.3d 85 (Pa. Super. 2018), *allocator denied*, 204 A.3d 924 (Pa. March 20, 2019). He challenged the sufficiency of the evidence to support his conviction for aggravated assault of

the John Doe victim. Relevant to this appeal, he argued that the trial court abused its discretion in allowing Detective Wearing to narrate the surveillance video obtained from the corner market and testify that Palmer, who admitted to appearing in earlier portions of the video, was also the person depicted firing the gun. *Id.* at 99. We concluded that Detective Wearing's testimony was properly admitted as "non-expert opinion[]" testimony and was "based upon his perceptions of [the videos], placed his subsequent actions in context, and was helpful in allowing the jury to reach a clear understanding of all his testimony." *Id.* at 101. Moreover, we noted that the identity of the shooter presented a factual issue and was properly left to the jury to resolve. *Id.* Accordingly, we affirmed the judgment of sentence.

### C.

Palmer filed the instant timely PCRA petition and the PCRA court appointed counsel. He alleged that trial counsel was ineffective for failing to challenge the weight of the evidence to support his convictions in a post-sentence motion and failing to present a video expert to rebut Detective Wearing's testimony. He further argued that appellate counsel was ineffective for failing to challenge the discretionary aspects of his sentence on appeal.

The PCRA court held an evidentiary hearing on the claims related to the defense expert and the discretionary aspects of the sentence. At the hearing, Palmer testified that he had requested a direct appeal following sentencing. He said that because the Commonwealth's case was based on the surveillance

video, he believed that he should have had an expert testify to refute Detective Wearing's testimony. He discussed the possibility of an expert with trial counsel and she said she did not believe it was necessary. He and his family researched defense experts prior to trial and believed that there were experts available who could have testified on his behalf but he did not identify anyone specifically.

Palmer said a defense expert would have been helpful in refuting Detective Wearing's testimony he did not believe the shooter could be identified from the grainy, black and white footage of the shooting. He admitted to being depicted in the color footage earlier in the day but said only the black and white footage captured the shooting. Because the police only recovered a pair of sneakers from his home and his fingerprints from the baggie of narcotics, he believed Detective Wearing's testimony identifying him on the video was crucial to the Commonwealth's case. On cross-examination, Palmer testified that he met with trial counsel at least once prior to trial but could not recall when he spoke with her about hiring an expert.

Next, appellate counsel testified that he chose to raise the two above-described issues on appeal after reviewing the entire record for possible issues. He said that it was possible that he could have challenged the sentence as excessive. It was his practice to only raise the issues that were most likely to garner relief, and he believed the sufficiency issue and the challenge to Detective Wearing's testimony were the strongest issues in Palmer's case. He

believed he would not be successful in challenging the sentence because each of the aggravated assault sentences fell at the bottom of the standard range of the sentencing guidelines. He testified that including the sentencing challenge in the brief would distract from the stronger issues, and if he had thought the sentencing claim would be successful, he would have raised it.

Finally, trial counsel testified that she chose to raise a defense of misidentification based on the gaps in the surveillance video. She contended that the person depicted in the shooting video was not Palmer, who was depicted earlier but had disappeared from the frame prior to the shooting. She recalled that the Commonwealth also presented evidence of Palmer's statement to Detective Rocks, his DNA on the package of narcotics found at the scene, and evidence that Palmer was wearing the eyeball t-shirt at the time of his arrest. She agreed that the DNA report from the narcotics was inconclusive as to the DNA of two other individuals.

Trial counsel testified that she believed the video was strong evidence in favor of the Commonwealth. She said the footage was black and white when it was dark outside but was in color during the daytime. The Commonwealth made a compilation using footage from the two cameras that included some arrows and markings. She recalled that Palmer's face was visible in the daylight portions of the videos. Trial counsel felt that an expert was not necessary to refute Detective Wearing's testimony:

> What Detective W[e]aring largely testified to was consistencies
> and the people in terms of their clothing and their appearance.

> He testified as a lay witness. I did not believe that a defense expert who would provide some specialized knowledge to assist the jury in determining similarities and differences in physical appearance and clothing. I felt that that was a factual determination for the jury to make on their own.

Notes of Testimony, 10/7/21, at 38. She said that she had previously consulted with expert witnesses regarding misidentification but had never called one during a trial. In Palmer's case, she "didn't think an expert would bring some specialized knowledge that would aid the jury in determining the similarities and differences of the man on the video. They are purely factual questions." *Id.* at 39. On cross-examination, she testified that she had never identified any technical or authentication issues concerning the footage and that she had adequate time to review the videos before trial.

The PCRA court concluded that appellate counsel had made a reasonable strategic decision to not raise a sentencing issue on appeal and could not be found ineffective for exercising her professional judgment. Regarding the expert witness, it first observed that Palmer had not produced a certification from such a witness to establish that such an expert existed, was available to testify, and would have provided testimony that benefitted the defense. Thus, it concluded that the petition did not properly plead and prove the claim and failed on that basis alone. Additionally, the PCRA court held that trial counsel had made all appropriate objections to the video during trial, and that the identification of Palmer as the shooter was properly left to the jury as the fact-finder. Moreover, trial counsel's strategic decision to challenge the gaps in

the video and argue misidentification was a reasonable one. Accordingly, the PCRA court dismissed the petition. Palmer timely appealed and he and the PCRA court have complied with Pa. R.A.P. 1925.[3]

## II.

Palmer raises three challenges to the effectiveness of prior counsel: whether trial counsel was ineffective for failing to present an independent video expert, whether appellate counsel was ineffective for failing to challenge the discretionary aspects of his sentence, and whether trial counsel was ineffective for failing to challenge the weight of the evidence in the post-sentence motion. "To prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Commonwealth v. Sarvey*, 199 A.3d 436, 452 (Pa. Super. 2018).

> Generally, counsel's assistance is deemed constitutionally
> effective if he chose a particular course of conduct that had some

---

[3] "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." *Commonwealth v. Weimer*, 167 A.3d 78, 81 (Pa. Super. 2017). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Id.* (citation omitted). "[A] PCRA court has discretion to dismiss a PCRA petition without a hearing if the court is satisfied that there are no genuine issues concerning any material fact; that the defendant is not entitled to post-conviction collateral relief; and that no legitimate purpose would be served by further proceedings." *Commonwealth v. Brown*, 161 A.3d 960, 964 (Pa. Super. 2017) (citations omitted).

reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

*Commonwealth v. Spotz*, 84 A.3d 294, 311-12 (Pa. 2014) (citations omitted).

"[F]ailure to prove any of these prongs is sufficient to warrant dismissal of the claim without discussion of the other two." *Commonwealth v. Robinson*, 877 A.2d 433, 439 (Pa. 2005) (citation omitted). We presume that counsel has rendered effective assistance. *See Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015). Finally, counsel cannot be ineffective for failing to pursue a meritless claim. *Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa. Super. 2012).

## A.

To succeed on a claim that counsel was ineffective for failing to call a witness at trial, a PCRA petitioner must establish:

(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Wantz*, 84 A.3d 324, 331 (Pa. Super. 2014) (citation omitted). "A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy."

*Commonwealth v. Sneed*, 45 A.3d 1096, 1108-09 (Pa. 2012) (quotations & citation omitted).

The PCRA court did not err in concluding that Palmer failed to carry his burden of pleading and proving he was entitled to relief on this claim. In his petition, Palmer identified an expert who specializes in video enhancement, authentication and analysis, and attached a print-out from the expert's website describing his services and areas of expertise. Memorandum of Law in Support of Amended Petition for Relief Pursuant to [PCRA], 8/18/20, at 15 & Appendix A. He further argued, "[o]bviously there are other expert witnesses that trial counsel could have retained." *Id.* at 15. He did not attach a certification from any expert witness detailing testimony that they would have offered in Palmer's defense and he did not call any experts to testify at the evidentiary hearing.

The PCRA court properly concluded that this pleading did not conform to the requirements for relief under the PCRA, which require a petitioner to attach a witness certification for each intended witness when he requests an evidentiary hearing on a petition. 42 Pa.C.S. § 9545(d)(1) (requiring certification by witness, petitioner or counsel detailing the substance of the proposed witness's testimony). Additionally, Palmer did not establish the elements of an ineffectiveness claim related to failure to call a witness at trial. *See Wantz*, *supra*. While he identified one possible witness who specializes in forensic examination of videos, he did not plead that this witness was

- 13 -

available and willing to testify at his 2016 trial. He did not explain what testimony the expert could have offered to rebut Detective Wearing's lay opinion that Palmer was the shooter depicted in the surveillance video. As a result, he has not established that the absence of this hypothetical expert "was so prejudicial as to have denied [him] a fair trial." *Id.*

Moreover, trial counsel testified at the evidentiary hearing that she did not retain a video expert because she believed identification was a factual issue properly within the province of the jury and that she did not need an expert to rebut Detective Wearing's lay testimony. We agreed with this reasoning when disposing of Palmer's challenge to Detective Wearing's testimony in his direct appeal. *See Palmer*, *supra*, at 101. Thus, trial counsel articulated a reasonable basis for her chosen strategy. Without evidence of more specific expert testimony that would have supported his defense of misidentification, Palmer has not convinced us that his preferred strategy would have had a "substantially greater" potential for success. *Spotz*, *supra*; *Sneed*, *supra*. No relief is due.

**B.**

Next, Palmer argues that appellate counsel was ineffective for failing to challenge his sentence as excessive and unreasonable. However, appellate counsel articulated a reasonable basis for declining to pursue this issue on appeal. He explained that after reviewing all materials in Palmer's file, he concluded that the two issues he raised on appeal were the strongest. He did

not want to distract from those issues by raising a sentencing claim that he believed, based on his experience, would not garner relief. It is well-established that "[t]he process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Commonwealth v. Staton*, 120 A.3d 277, 294 (Pa. 2015) (citation omitted). Here, while Palmer did not ultimately prevail on direct appeal, one of the judges on the direct appeal panel agreed with appellate counsel's argument and would have vacated one of the aggravated assault convictions for lack of sufficient evidence. *See Palmer*, *supra*, at *105-06 (Ransom, J., concurring and dissenting). Appellate counsel's choice to focus his advocacy on the issues more likely to garner relief was reasonable.

Moreover, Palmer's claim that his sentence was excessive lacks arguable merit. Palmer was sentenced at the bottom of the standard range of the sentencing guidelines for the two counts of aggravated assault and all other sentences were imposed concurrently. The trial court reviewed a PSI and placed a lengthy explanation of its reasoning for the sentence imposed on the record, thoroughly addressing Palmer's history, his rehabilitative needs, the seriousness of the offense and the protection of the community. Notes of Testimony, 10/28/16, at 17-22; *see also* 42 Pa.C.S. § 9721(b). Under these circumstances, "Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Hill*, 210 A.3d 1104, 1117 (Pa.

Super. 2019) (internal quotations & citation omitted). Because Palmer would not have been entitled to relief on this issue, appellate counsel cannot be found ineffective for failing to raise it. *Rykard, supra*.

### C.

Finally, Palmer argues that trial counsel was ineffective for failing to challenge the weight of the evidence to support his convictions in a post-sentence motion.[4] "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Sullivan*, 820 A.2d 795, 805-06 (Pa. Super. 2003) (citation omitted). "Trial judges, in reviewing a claim that the verdict is against the weight of the evidence, do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000) (quotations omitted). A new trial is appropriate only when the verdict "is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Olsen*, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation

---

[4] When evaluating a challenge to the weight of the evidence to support a conviction, this Court does not reweigh the evidence presented at trial, but rather evaluates the trial court's denial of the motion for a new trial for an abuse of discretion. *Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013). A trial court's determination that the verdict was not against the weight of the evidence is "[o]ne of the least assailable reasons for granting a new trial." *Id.* (citation omitted).

omitted). "[T]he evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Akhmedov***, 216 A.3d 307, 326 (Pa. Super. 2019) (*en banc*) (citation omitted).

In rejecting this claim, the PCRA court reviewed the evidence adduced at trial and concluded that the jury's verdict did not shock the conscience.[5] PCRA Court Opinion, 11/18/21, at 6-7. The jury viewed the footage taken from the deli, which showed an individual in a distinctive eyeball t-shirt, dark shorts with white stitching, white socks pulled up to his shins and dark sneakers walking back and forth in front of the deli during the day. The individual was a tall, thin black male with a short afro. While the shooter wore a dark jacket instead of the eyeball t-shirt, he had the same shorts, socks, sneakers, build and hairstyle as well as the distinct "strut" that matched the individual seen on the video earlier in the day. Notes of Testimony, 8/17/16, at 89-90. The individual in the dark jacket made a "shooting-type" motion with his arm at the exact time that Kelsey was shot further down the block. ***Id.*** at 84. Fired cartridge casings were recovered from the area.

After viewing the surveillance video, Detectives Wearing and Rocks left the deli and immediately saw Palmer across the street wearing the eyeball t-shirt. Palmer matched the individual's other physical characteristics and had the same distinctive gait. After his arrest, Palmer confirmed that he was the

_____

[5] The PCRA court denied relief on this claim without an evidentiary hearing.

- 17 -

individual seen on the footage in the eyeball t-shirt, though he denied responsibility for the shooting. He asked Detective Rocks "what his bail would be if he shot this girl by accident." *Id.* at 137. Finally, shoes matching the video were recovered from his home and his DNA was discovered on a bag of narcotics dropped at the scene of the shooting.

The PCRA court did not abuse its discretion in finding that this evidence was consistent with the guilty verdict and did not shock its conscience. The jury viewed the recovered footage throughout the trial and was entitled to conclude that Palmer was the individual depicted at the time of the shooting. *Olsen*, *supra*. Trial counsel could not be ineffective for failing to pursue a meritless motion and no relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2022