J-A27014-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN MICHAEL MILLS | : | No. 591 MDA 2024 |

Appeal from the PCRA Order Entered April 19, 2024
In the Court of Common Pleas of Clinton County Criminal Division at
No(s): CP-18-CR-0000547-2020

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED: MARCH 4, 2025**

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas of Clinton County, granting Shawn Michael Mills' petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, and awarding him a new trial. After careful review, we affirm.

On October 25, 2020, at the Green Lantern, a bar located at 19 Gratzmar Avenue, Renovo, Clinton County, a series of bar fights broke out between multiple individuals in varying states of intoxication.[1] At approximately 11:00 p.m., Mills and Kim Kelley, his then-girlfriend, were playing pool with Aaron Ransdorf, who had consumed several beers and two shots of whiskey. After the game concluded, Mills and Kelley left the bar.

---

[1] We note that almost every witness to the fights had a different version of events with regard to who started which fight, and who broke up which fight. However, the outcomes of the fights were the same in each witness's testimony.

Ransdorf saw the two leave and followed them. Mills and Kelley told Ransdorf to leave them alone and go back inside the bar because Ransdorf was too drunk. Ransdorf interpreted this discussion as hostile and attempted to push himself between Mills and Kelley. Mills got in Ransdorf's way and the two men began to wrestle and fell to the ground.

Josh Teague, who had consumed four double whiskey and Cokes, and Michael Blackwell, who had consumed 13 Jager bombs and 12 beers, heard that there was a fight going on outside. Both men exited the bar and separated Mills and Ransdorf. Teague pulled Mills away from Ransdorf and Blackwell pulled Ransdorf up off of the ground. Ransdorf was escorted back into the bar by Justin Hillyer,[2] who had consumed four beers. After Hillyer escorted Ransdorf into the bar, Blackwell attacked Mills, and the two men began pushing and punching each other. Eventually Brandon Schenck, who had consumed four single whiskey and Cokes, and Hillyer broke up this fight. Schenck spoke with Blackwell and attempted to calm him down. At this point, Kelley went home and Hillyer returned to the bar to close it down for the night.

Before closing, Teague and Mills began shouting at each other and the two started fighting. Teague punched Mills in the face three times and Mills punched Teague once before the fight was ultimately broken up. However, shortly thereafter, Teague and Mills began fighting again. At some point, Teague knocked Mills against a car and onto the ground. Teague and Mills

---

[2] Hillyer is the co-owner of the Green Lantern.

wrestled, exchanged blows, and Teague ended up on top of Mills. Blackwell and another man joined in and began attacking Mills as well. One of the men kicked Mills in the head and back several times. Bradley Shearer, who had consumed four beers, exited the bar and attempted to pull Teague off of Mills, but was instead pulled down into the melee with them.

Mills, testifying in his own defense, stated that during the above-described fights, he was put into a headlock, his nose was broken, he was punched multiple times in the face by Teague, kicked in the groin, thrown against a car, and kicked in his head and back while on the ground. Mills also stated that he just wanted to leave, did not want to fight anyone, and pulled out his knife while he was on the ground to defend himself.

Hillyer returned to the parking lot, saw the men fighting, and pulled Shearer off of Mills. Ultimately, Teague and Blackwell were also pulled away from the fight. At this point it became evident that Shearer had been stabbed and was bleeding profusely from his left leg and arm. Teague and Chris Costulas helped load Shearer, who was bleeding heavily, into the bed of Shearer's truck. Blackwell and Schenck took Shearer to the hospital.

Mills got into his car and, as he tried to leave, Hillyer attempted to take Mills' keys away from him. After Mills successfully started his car, Hillyer stood in front of the car and yelled that Mills could not leave because the police had been called. Hillyer attempted to open the driver side door and Mills began driving. Hillyer let go of the car, and Mills exited the parking lot. After a few seconds, Mills returned and Hillyer yelled at him to leave. Mills turned his

vehicle around and exited the parking lot before immediately making a U-turn and returning to the parking lot.  Teague and Hillyer approached Mills' car and asked why he was leaving and attempted to pull Mills out of his car.  Hillyer opened the passenger door of Mills' car, entered it, and attempted to put Mills' car into park.  Teague grabbed Mills and began pulling him out of the driver's side window.  Teague saw Mills grab a firearm and Teague and Hillyer both ran.  As they ran, Teague, Hillyer, and several other witnesses heard three gunshots.  No one was struck by any projectiles.  As a result of the stab wounds, Shearer's peroneal nerve[3] was severed, and he was unable to continue his work as a telecommunications lineman.

Subsequently, Mills was charged with one count each of aggravated assault—deadly weapon,[4] aggravated assault—serious bodily injury,[5] firearm not to be carried without a license—otherwise eligible,[6] firearms not to be

---

[3] The common peroneal nerve branches from the sciatic nerve and provides sensation to the front and sides of the legs and to the top of the feet. https://www.hopkinsmedicine.org/health/conditions-and-diseases/peroneal-nerve-injury#:~:text=The%20common%20peroneal%20nerve%20branches,the%20ankle%20and%20toes%20upward.  This nerve also controls the muscles in the leg that lift the ankle and toes upward. *Id.*  Injuries to the peroneal nerve can cause numbness, tingling, pain, weakness and a gait problem called foot drop.  *Id.*

[4] 18 Pa.C.S.A. § 2702(a)(4).

[5] *Id.* at § 2702(a)(1).

[6] *Id.* at § 6106(a)(2).

carried without a license,[7] two counts of simple assault,[8] and four counts of recklessly endangering another person (REAP).[9]

On December 3, 2020, Mills proceeded to a preliminary hearing during which many of the above witnesses testified, including Shearer. Shortly thereafter, the entire bench of Clinton County Court of Common Pleas recused from the case pursuant to an Order issued by President Judge Craig P. Miller.[10] *See* Recusal Order, 12/11/20, at 1. As a result, the Honorable David C. Klementik, Senior Judge of the Sixteenth Judicial District, was assigned to preside over the case.

On February 17-18, 2022, Mills proceeded to a two-day jury trial,[11] after which he was convicted of aggravated assault—deadly weapon, aggravated assault—serious bodily injury, and firearm not to be carried without a license—otherwise eligible.[12] Mills was found not guilty of firearms not to be carried

---

[7] *Id.* at § 6106(a)(1).

[8] *Id.* at § 2701(a)(3).

[9] *Id.* at § 2705.

[10] President Judge Miller ordered recusal because Mills' sibling is a Clinton County Magisterial District Judge. *See id.*

[11] At trial, Mills raised a claim of self-defense and the trial court instructed the jury on self-defense.

[12] Although not challenged on appeal, we note that, at trial, Sheriff Kerry Stover testified regarding Mills's conviction for firearm not to be carried without a license—otherwise eligible. Sheriff Stover testified that Mills had an expired concealed carry permit. *See* N.T. Jury Trial, 2/17/22, at 200-04. *(Footnote Continued Next Page)*

without a license, and one count each of REAP and simple assault. The remaining count of simple assault and three counts of REAP were either dismissed or withdrawn. The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report.

On May 10, 2022, the trial court sentenced Mills to an aggregate term of incarceration of five years and three months to ten years and six months. On May 20, 2022, Mills filed a timely post-sentence motion and, on August 8, 2022, the Commonwealth filed a response. The trial court conducted a post-sentence motion hearing on August 15, 2022, after which it amended Mills' sentence and ran his sentences concurrently, resulting in an aggregate term of incarceration of five to ten years.

Mills filed a timely counseled notice of appeal and complied with Pa.R.A.P. 1925(b). However, on December 2, 2022, during the pendency of his appeal, Mills filed a *pro se* PCRA petition. The trial court did not address or enter any orders regarding Mills' premature PCRA petition. On January 20, 2023, this Court dismissed Mills' direct appeal for failure to comply with our docketing statement requirements pursuant to Pa.R.A.P. 3517.

---

Sheriff Stover explained that Mills' permit expired on February 24, 2020 but that the General Assembly had extended the renewal period during COVID-19 until July 15, 2021. *See id.* at 200-02 (explaining COVID-19 emergency shutdown orders and General Assembly's extension of time to file for concealed carry permit renewals). Sheriff Stover testified that Mills did not apply for renewal of his permit but conceded that the October 25, 2020 bar fights were within the extended renewal period set forth by the General Assembly. *See id.* at 207-12. In any event, the jury found Mills guilty of this offense based upon Sheriff Stover's testimony.

Subsequently, on August 25, 2023, Mills filed a counseled amended PCRA petition alleging that trial counsel rendered ineffective assistance by failing to call certain witnesses, failing to secure a medical expert, and failing to effectively cross examine Shearer with the preliminary hearing transcript. Due to Judge Klementik's retirement, the Honorable Jeffrey K. Sprecher was appointed to handle Mills' PCRA petition. On September 7, 2023, the Commonwealth filed a response and, on February 20, 2024, the PCRA court conducted an evidentiary hearing.

On April 19, 2024, the PCRA court entered an order denying, in part, and granting, in part, Mills' PCRA petition and awarding him a new trial. In particular, the PCRA court denied Mills' claims relating to securing and calling witnesses, and granted Mills a new trial for trial counsel's failure to effectively cross examine Shearer with his preliminary hearing testimony. *See* Order and Opinion, 4/19/24, at 1-16.

The Commonwealth filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth now raises the following issue for our review: "The PCRA court erred in its grant of [a] new trial when it failed to consider the factual backdrop of [Mills'] trial testimony in overall assessing the legal aspects of the 'prejudice' prong[.]" Commonwealth's Brief, at 15.[13]

_____

[13] We note that the Commonwealth's statement of questions involved spans three pages and, thus, we glean this issue from the Commonwealth's argument section heading, where the claim is stated more concisely.

Prior to addressing the Commonwealth's claim, we note that Mills' initial *pro se* PCRA petition was prematurely filed. **See** 42 Pa.C.S.A. § 9545(b)(3) ("For purposes of [the PCRA], a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."); **Commonwealth v. Smith**, 244 A.3d 13, 17 (Pa. Super. 2020) (PCRA petition filed before judgment of sentence becomes final is a premature petition). Previously, this Court has held a premature PCRA petition constitutes a legal nullity, that a PCRA court lacks authority to consider such a filing, and that a premature submission should be dismissed without prejudice to a petitioner's right to refile once the judgment of sentence becomes final. **See Commonwealth v. Leslie**, 757 A.2d 984, 985 (Pa. Super. 2000); **see also Commonwealth v. Kubis**, 808 A.2d 196, 198 n.4 (Pa. Super. 2002) ("The PCRA provides petitioners with a means of collateral review, but has no applicability until the judgment of sentence becomes final.").

Recently, this Court has found that a premature *pro se* PCRA petition was properly determined to be a legal nullity, but that the subsequent timely filed counseled amended PCRA petition was not. **See Commonwealth v. Dunham**, 319 A.3d 12, n.4 (Pa. Super. 2024) (Table).[14] In **Dunham**, the

_____

[14] Pa.R.A.P. 126(b) (non-precedential decisions of this Court filed after May 1, 2019, may be cited for their persuasive value).

- 8 -

petitioner filed his *pro se* PCRA petition 19 days prior to his judgment of sentence becoming final. **See id.** However, his counsel did not file an amended petition until his judgment of sentence had become final by the expiration of the time to file a direct appeal. **See id.** Consequently, this Court concluded that the counseled amended PCRA petition was a "timely, non-premature filing which vested the PCRA court with jurisdiction to undertake collateral review." **Id.** (citation omitted).

We find that the procedural posture of **Dunham** is similar and persuasive to the instant procedural quandary. In particular, we observe that Mills filed a premature *pro se* PCRA petition, which constitutes a legal nullity. **See Williams**, **supra**. However, Mills' counsel did not file an amended PCRA petition until after Mills' judgment of sentence became final when the time expired for him to seek review of this Court's dismissal of his appeal. Importantly, although the PCRA court should have dismissed Mills' *pro se* PCRA petition without prejudice, the PCRA court did not take any action on Mills' *pro se* PCRA petition while his direct appeal was pending.[15] Moreover, Mills' amended PCRA petition was filed within the one-year time limit to which all PCRA petitions are subject. **See** 42 Pa.C.S.A. § 9545(b)(1) (any PCRA petition "shall be filed within one year of the date the judgment becomes final"). Consequently, we conclude that the PCRA court had jurisdiction to

---

[15] Although not dispositive, we note that the Commonwealth has conceded the timeliness of PCRA counsel's amended PCRA petition. **See** Commonwealth's Answer to Amended PCRA Petition, 9/7/23, at 2.

address the merits of Mills' timely filed amended PCRA petition. *See Dunham*, *supra*.

The Commonwealth argues that the PCRA court erred in granting Mills' PCRA petition by failing to consider the entire record and that the PCRA judge, which did not preside over the trial, lacked the institutional memory to properly contextualize the evidence. *See* Commonwealth's Brief, at 15-25. The Commonwealth, however, acknowledges that Mills' claim has arguable merit and that trial counsel had no reasonable basis for failing to effectively cross examine Shearer with the preliminary hearing transcript. *See id.* at 16-17. Thus, the Commonwealth challenges only the PCRA court's conclusion that Mills suffered actual prejudice as a result of trial counsel's failure. *See id.* at 18-15. In particular, the Commonwealth argues that the PCRA court failed to "look[] at the entire [] record" and did not consider Mills' own testimony. *See id.* at 18-21 (block quoting trial testimony). The Commonwealth posits that trial counsel cross-examined Commonwealth witnesses for approximately 150 pages of trial transcript, and that Mills' trial testimony was not credible when compared to the testimony of other witnesses. *See id.* at 23-24. The Commonwealth avers that, based upon these factors, Mills did not suffer actual prejudice by trial counsel's omission. *See id.* at 24-25. We disagree.

> Our standard of review of a trial court order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not

be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations and internal quotation marks omitted).

Generally, counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [the petitioner]." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). Our Supreme Court has stated that in order to "merit relief based on an ineffectiveness claim under the PCRA, a petitioner must show that such ineffectiveness[,] in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Collins*, 957 A.2d 237, 244 (Pa. 2008) (quotation and citation omitted).

> To satisfy this burden, [a petitioner] must plead and prove by a preponderance of the evidence that[:]  (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness there is a reasonable probability that the outcome of the challenged proceeding would have been different.  Failure to satisfy any prong of the test will result in rejection of the [petitioner]'s ineffective assistance of counsel claim.

*Commonwealth v. Holt*, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations omitted). Where ineffective assistance of counsel on appeal is asserted, to prove prejudice, the petitioner must show that there is a reasonable probability that the outcome of the appeal would have been

different but for counsel's deficient performance. *See Commonwealth v. Staton*, 120 A.3d 277, 295 (Pa. 2015).

Instantly, the relevant portion of the preliminary hearing transcript is as follows:

[Shearer:] I personally think that when [Teague] and [Mills] were in the altercation and I tried to break the fight up [Mills] just grabbed the nearest thing that [he] could grab, which was my leg, **because [Teague] was beating [him] up fairly bad,** and I think that [Mills] just grabbed the nearest thing that [he] could. **[Mills] had a fight[-]or[-]flight instinct and that's what [he] did.** I don't think that [Mills saw] me that night [and] was like ["]oh I'm going to stab [] Shearer." **Obviously that's not what happened**. . . . **But when you have a fight[-]or[-]flight instinct and your life is on the line, [be]cause I do feel for [Mills], I do, I would have done the same thing probably.**

N.T. Preliminary Hearing, 12/3/20, at 18 (emphasis added).

At trial, Mills' attorney attempted to cross examine Shearer with the preliminary hearing transcript in the following exchange:

Attorney Yates: [D]o you remember testifying at a preliminary hearing on December 3[,] 2020?

Shearer: Yeah, on a Zoom meeting. Yes.

Attorney Yates: Okay. And you testified, correct?

Shearer: Yeah.

Attorney Yates: And you had stated that, during your testimony, that [] Mills was, quote, fighting for his life?

Shearer: I don't recall saying that.

Attorney Yates: Would it refresh your memory if I showed you the preliminary hearing transcript?

Shearer:  Yeah.

* * *

Attorney Yates:  This is a transcript of the preliminary hearing. It's been marked as Defendant's Number 1.  If you want to take a couple minutes and go through your testimony and cross-examination, maybe it will refresh your memory.

Shearer:  All right.

Attorney Yates:  Go ahead.

Shearer:  **Can you—I don't—I mean, there's a ton of pages through here.  So, I don't really know where—exactly where it is.**

Attorney Yates:  **There should be an index.  Nope.  There isn't. Okay.  Keep going.  Keep going.  Keep going.  Okay. This is where you start testifying.  Okay?**

Shearer:  Yep.

Attorney Yates:  And the pages are numbered down at the bottom. Okay?

Shearer:  I got it.

Trial Court:  **Is there a couple of pages that you can direct him to without having to reread his entire testimony?**

Attorney Yates:  **Keep going.  Keep going.  Keep going.  Sorry, [Y]our [H]onor.**

Trial Court:  Take your time.

Shearer:  Yeah.  I don't think—I was done before this.  I left after I—because that was when [] Hillyer went.  So, I was already done by that point.

Attorney Yates:  So, for the jury's edification, his testimony ended at page 20.

Shearer:  Yeah.  Yeah.  20.

> Attorney Yates: **And when did you start getting questioned by—let me see. Keep going. You're going the wrong way buddy. Keep going. Keep going. Whoops. It's somewhere between what is numbered as page 11 is where [] Shearer was cross-examined by former counsel. Okay? We don't want to belabor things.**

N.T. Jury Trial, 2/18/22, at 22-25 (emphasis added). Ultimately, Attorney Yates did not locate the passage and did not revisit this line of questioning.

The PCRA court, in granting Mills relief, noted that the preliminary hearing transcript was available to trial counsel. **See** Order and Opinion, 4/19/24, at 11; **see also** N.T. Jury Trial, 2/18/22, at 22-25 (trial counsel handing the transcript to Shearer). The PCRA court concluded that trial counsel's possession of the preliminary hearing transcript, but total failure to locate the correct passage, is not a reasonable basis for failing to properly impeach Shearer's trial testimony, and that no other alternative reasonable basis existed to excuse trial counsel's failure. **See** Order and Opinion, 4/19/24, at 12-13. Regarding the prejudice prong, the PCRA court explained as follows:

> The [c]ourt notes that [Mills] raised self-defense . . . at trial, and the trial court believed that instructing the jury on self-defense was appropriate. In fact, the trial transcript [] shows that the Commonwealth attempted, and ultimately failed, to prevent the jury from receiving a self-defense instruction[.]
>
> * * *
>
> Th[e PCRA c]ourt finds that the trial court's recognition of the defense of self-defense to be persuasive. Further, upon review of the trial transcript, th[e PCRA c]ourt independently concludes that self-defense was a cognizable defense in this case. Trial testimony from [Mills,] as well as several Commonwealth witnesses[,]

- 14 -

> evinces no dispute that [Mills] was engaged by multiple individuals in a violent altercation. The trial transcript further indicates that [Mills] was outnumbered during the altercation, and that multiple different individuals struck [him].

Order and Opinion, 4/19/24, at 14-15. Thus, the PCRA court concluded that, absent trial counsel's ineffectiveness, there is a reasonable probability that the result of the proceeding would have been different.

Our review of the record confirms the PCRA court's factual findings and conclusions of law. *See id.* at 1-16; PCRA Court Opinion, 6/18/24, at 1-14. The trial testimony in this case, which we briefly summarized above, consists of over 400 pages of multiple individuals testifying that several people attacked Mills. *See* N.T. Jury Trial, 2/17/22, at 67-68 (Blackwell testifying Teague swung at Mills multiple times and struck Mills in the face); *id.* at 79, 82, 112-13 (Teague testifying he punched Mills so hard he broke Mills' nose); *id.* at 217, 219-20 (Schenck testifying Teague and Blackwell attacked Mills); *see also* PCRA Court Opinion, 6/18/24, at 13 (summarizing bar fight testimony); Order and Opinion, 4/19/24, at 14-16 (summarizing bar fight testimony). The PCRA court also relied upon the preliminary hearing testimony, set forth above, that Shearer believed Mills was in a "fight-or-flight" situation and that Mills' life was "on the line." *See* Order and Opinion, 4/19/24, at 16 (citing N.T. Preliminary Hearing, 12/3/20, at 18). Immediately preceding the stabbing, Mills had been thrown against a vehicle and was knocked to the ground where he was attacked by at least three individuals after having been in several fights. *See id.* at 15; *see also* PCRA Court Opinion, 6/18/24, at 12-13. Shearer's statement that Mills was being badly

beaten and was in a "fight-or-flight" mode where his life was "on the line" is likely to have changed the outcome of the case. ***See Brandt***, ***supra***; ***Staton***, ***supra***. Thus, as the PCRA court concluded, Mills' claim had arguable merit, his trial counsel lacked a reasonable basis for failing to effectively cross examine Shearer with the preliminary hearing transcript, and Mills suffered prejudice due to counsel's failure.

Based on the foregoing, it is clear to this Court that Judge Sprecher appropriately considered all of the relevant testimony, exhibits, and arguments before concluding that Mills' was entitled to relief. Accordingly, we affirm.[16]

---

[16] To the extent that the Commonwealth argues that the PCRA court failed to consider the entire record and implies that the PCRA court was unable to accurately perform its duty where it did not preside over the trial, we find this argument to be baseless and inappropriate. ***See*** Commonwealth's Brief at 8-9, 24-25. Not only are the PCRA court's opinions in this case thorough and well-reasoned, but, at the PCRA hearing, the PCRA court allowed the Commonwealth to reexamine significant portions of the trial testimony and refer to exhibits. ***See*** PCRA Court Opinion, 6/18/24, at 3-8 (summarizing Commonwealth's reintroduction of various trial court exhibits and quoting trial testimony). Additionally, the PCRA court conducted its own thorough review of the record in this case. It is evident to this Court that Judge Sprecher put in substantial effort to thoroughly address the claims in Mills' PCRA petition. Were we to accept the Commonwealth's argument, **which we expressly do not**, we would establish a precedent precluding review of any PCRA claims regarding trials in which the presiding judge is no longer on the bench at the time of PCRA proceedings. This is obviously an absurd and untenable result.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/04/2025